Granville **RIDDLE**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 71011.

Court of Criminal Appeals of Texas,
En Banc.

June 8, 1994.

Rehearing Denied Sept. 21, 1994.

Kay Davis, V.G. Kolius, Amarillo, for appellant.

Danny E. Hill, Dist. Atty., Wesley G. Clayton and Bruce Sadler, Asst. Dist. Attys., Amarillo, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Presiding Judge.

Appellant was convicted by a jury in Potter County of capital murder pursuant to V.T.C.A., Penal Code, Section 19.03(a)(2). After the jury answered the special issues in the affirmative, the trial court imposed the death penalty. Article 37.071(b), V.A.C.C.P. In an automatic, direct appeal to this Court, appellant raises sixteen points of error. We shall affirm.

At trial, appellant testified he and the victim had known each other for several years. On October 9, 1988, appellant and a friend drove to the victim's home to see if he wanted to go drinking. Appellant testified he carried a tire iron so he could pry the screen off the kitchen window to gain entry, but found a door unlocked. Appellant entered the victim's house through an unlocked door and found him "drunk, passed out" in the bedroom.

Appellant woke the victim and began to talk to him. The victim told appellant he wanted to have a homosexual relationship with him. As appellant got up to leave, the victim grabbed appellant by the arm, pulled appellant on top of him, put his lips on appellant's ear, and put one hand on appellant's butt. Appellant hit the victim "on the top" of his head with the tire iron. Appellant testified that after he struck the first blow, appellant got out of the bed and the victim "raised his hands up, grabbed his head and started moaning." Appellant testified he inflicted more blows to the victim, and the more he hit him the madder he got. The victim was struck in the head at least fifteen times. As appellant left the house, he took the victim's wallet and his car.

The forensic pathologist, who conducted the victim's autopsy, testified the victim's blood-alcohol level was .29% which showed the victim was extremely intoxicated to the degree that his motor and sensory functions were "totally out." The pathologist further testified the cause of death was multiple blunt force trauma, and the fatal blow was one which struck the victim "behind the left ear in the mastoid area and compressed the spinal cord." The pathologist also testified the first blow was not the fatal blow.

In points of error two and three, appellant contends the trial court erroneously denied his challenges for cause to veniremembers Payne and Miller because they could not distinguish between the terms "intentionally" and "deliberately," and any pro-

fessed ability by them to distinguish those terms was based on the State's use of misleading hypotheticals which effectively destroyed any meaningful difference between those terms in violation of *Lane v. State*, 743 S.W.2d 617 (Tex.Cr.App.1987), and its progeny. The record reflects appellant peremptorily struck Payne and Miller after the trial court denied his challenges for cause to them. After appellant had exhausted his fifteen peremptory strikes, the trial court granted appellant another peremptory strike which he used. Appellant later requested another peremptory strike to use on veniremember Glenn which the trial court denied. Appellant informed the trial court he would have used a peremptory strike on Glenn had the trial court not erroneously denied his challenges for cause to several other veniremembers including Payne and Miller. Glenn was seated as the twelfth juror. To demonstrate reversible error, appellant must show the trial court erroneously denied his challenges for cause to both Payne and Miller. See *Martinez v. State*, 763 S.W.2d 413, 415 (Tex.Cr.App.1988).

During the State's voir dire examination of Payne, the prosecutor discussed the terms "intentional" and "deliberate" as follows:

"Q. Now, let's go to the first question. Remember that I told you that murder is the knowing and intentional causing the death of another individual. And for our hypothetical, we've already found that he knowingly and intentionally caused that death.

"So, when the Legislature constructed this question and used the word "deliberately," obviously, they were looking for more than knowingly and intentionally, because it would be silly to have you answer that question twice.

"A. Right.

"Q. And you would probably agree with me that in every day life, you and I may interchange intentionally and deliberate.

You know, you and I just talking on the street, I might use deliberate in one sentence, and you might use intentionally the next time—

"A. Right.

"Q. —with the same—well, obviously, the Legislature is looking for more.

"A. Uh-huh.

"Q. And we suspect—or we think—there is no definition for it at this time. There might be by the time we get to trial, but there is no definition for deliberately at this time.

"But I believe they are looking for more thought process.

"A. Uh-huh.[1]

"Q. You will receive a definition for intentionally. We already have one of those, and we've had one of those for a long time. And that is, *a person acts intentionally or with intent with respect to the nature of his conduct, when it is his conscious objective or desire to engage in the conduct or to cause the result.*[2]

"It's either his conscious objective or his desire to engage in that conduct or to cause the result.

"Now, if I'm sitting at my desk, and I'm beginning to write some note, message or something. I pick up this pen, and I begin to write with it, and I stop and look back at the other pen for a moment and go ahead and pick it up and I use this one, certainly it's an intentional act when I pick this up. *It was my conscious objective and desire to use this pen.*

"It was also an intentional act when I picked this one up, but not only was it intentional, it was also deliberate. I had that *thought process. I thought about it a moment.* Do you follow me?

"A. Yes.

"Q. If you were going to take a trip from here to Red River—you know, there's at least two routes. There's more than that,

---

1. Apparently anticipating the State's next set of questions, appellant then objected to the State's examination because, among other things, the hypotheticals used by the State failed to illustrate a meaningful difference between intentional and deliberate conduct, and the State failed to define "deliberately" within the common meaning and usage of that term. The trial court overruled appellant's objection and granted him a running objection to the State's line of questioning.

2. All emphasis supplied by the writer.

but, you know, you can either go Boys Ranch Road and to Dalhart, or you can go to Dumas to Dalhart.

"You get up in the morning, you pack your car with the intention of going to Red River. Then you pull up at a stop sign to make your decision as to whether or not you are going to take Boys Ranch Road, or you're going to go through Dumas.

"It was certainly your *conscious objective and desire to go to Red River.* You did that as an intentional act. Then you make a decision as to which route you're going to take. That's also an intentional act. But in addition thereto, *it's a deliberate act, because you had more thought process. You thought about it longer.*

"Do you follow me and see the distinction I'm making between those two?

"A. Yes.

"Q. All right. And you don't—I notice you don't have any children yet, but when you get children, you know, there will be a time, I'm sure, when your child is getting ready to leave the house, and they walk up to the door, and they open the door to leave, and your wife says, 'Don't you leave this house.'

"And she leaves the room. And they stand there a moment, and they go on out.

"A. Uh-huh.

"Q. *Well, it was their conscious objective and desire to leave that house. It was an intentional act when they walked up to open that door. But it was a deliberate act when they sat there and thought about it a moment and then went on out.*

"Do you follow me?

"A. Yes.

"Q. Do you see that distinction we're trying to make?

"A. Yes.

"Q. And that *extra thought process.* And we have to prove to you beyond a reasonable doubt that *extra thought process* was there, *a deliberate act with the expectation that death would occur.*

"Would you make us prove that to you?

"A. Yes, I would.

"Q. Okay. Now, let me tell you this: We do not have to prove premeditation. The law specifically says premeditation is something we do not have to prove to you. *So, somewhere between premeditation and intentional is that word "deliberate," or that extra thought process—*

"A. Right.

"Q. —it was *on purpose with the expectation that the death would result.* Follow me?

"A. Yes.

"Q. All right. Now, you may receive enough evidence during the guilt innocence phase, the first phase of the trial, whereby you think you can answer this question yes. You know, but the first thing that is going to happen if you find him guilty, I'm going to stand up at this desk, and I'm going to say, 'Your Honor, we retender, or we resubmit all the evidence they've heard.' Which means you can consider all the things that you heard surrounding the crime.

"And you may have heard evidence which proved to you that it was not only intentional, *that he did do that extra thought process, and it was deliberate with the expectation that death would result.*"

Appellant then questioned Payne as follows:

"Q. Okay. In this particular trial, we have focused probably more than anything else on the word 'deliberately.' And since you've talked to the District Attorney, and since you have had a little bit of experience and since the District Attorney had read the definition that you must use of the word "intentionally"—that is, a person acts intentionally when it is his or her conscious objective or desire to engage in the conduct or cause the result.

"Could you tell us, just in your own words, sir, the difference that you see, if there is a difference in your mind, between intentionally and deliberately as used in the context of that first question?

"A. Well, it's a little bit hard. *To me, those words mean about the same.*

"Q. That's what a lot of people say, so I understand.

"A. Yeah.

"Q. The difference that the District Attorney has suggested to you is that it takes a little more—some more thought process. "Do you feel that's the only difference, or do you agree with that?

"A. Well, that sounds reasonable to me. I mean, like I say, it's all hard for me to tell the difference between the two words, *but it sounds like that could be it, that it takes a little more thought process.*

.    .    .    .    .

"A. I can't really say, because to me, *they mean pretty much the same thing. If you do something that's intentionally or deliberately, you're—you do it because you want to do it.* That's my definition.

"Q. *It would be your conscious objective?*

"A. *Yeah, desire to do that.*"

The State then questioned Payne as follows:

"Q. Charles, you recognize when the Legislature created that first question and they defined the word—not defined the word—they used the word 'deliberate' instead of 'intentional,' that it certainly would not make sense to answer that question again if they mean exactly the same. You follow me on that, don't you?

"A. Yes.

"Q. And you *remember those examples that I gave you earlier as to the extra thought process that's required in order to prove deliberate up and above intentional?*

"A. Yes, I remember those.

"Q. Okay. *You would make us prove those, would you not?*

"A. Yes.

"Q. Just because you found somebody knowingly and intentionally guilty of committing a capital murder, you would not automatically answer that first question 'yes,' would you?

"A. No, I would not.

"Q. You would wait until you heard the punishment phase and listened to the mitigating circumstances, as well as the aggravating circumstances?

"A. Yes.

"Q. And then *make the determination as to whether or not that extra thought that he could form a deliberate idea with the*

*reasonable expectation that death would occur.*

"A. Yes.

"Q. Would you agree with that?

"A. Yes."

In support of his contention the State used improper hypotheticals, we understand appellant to be arguing the State's "trip" "pen" and "child" hypotheticals misstated the law by informing the veniremember that a person can be guilty of capital murder only by intentionally engaging in conduct that causes death. See, e.g., *Morrow v. State,* 753 S.W.2d 372, 375–76 n. 3 (Tex.Cr.App.1988) (intentional murder is a "result of conduct offense;" the defendant must intend to engage in the conduct that causes the death and intend that death result from that conduct). Appellant primarily relies on *Lane* in support of this argument.

In *Lane,* the State's "shooting in the ceiling" hypothetical misstated the definition of "intentional" by suggesting a person could be guilty of capital murder even though he did not intend that death result from his intentional conduct. *Lane v. State,* 743 S.W.2d at 622, 627–29. The second part of the State's "shooting in the ceiling" hypothetical also improperly suggested that "intentional" and "deliberate" had essentially the same meaning with the only difference being that deliberate conduct required a finding that the actor had a reasonable expectation that death would result from his intentional conduct; the second part of the hypothetical created a definition of "deliberate" which "was actually a working definition" of "intentional." *Id.* Therefore, the hypothetical created a false distinction between intentional and deliberate conduct, and could only have confused the veniremember's common sense impression of intentional and deliberate conduct. *Id.*

■ Here, unlike *Lane,* the State's "trip," "pen," and "child" hypotheticals properly illustrated the definition of intentional by informing the veniremember it required a conscious desire to cause a result; a conscious desire and objective to use a pen, to take a trip, and to leave a house. See *Morrow v. State,* 753 S.W.2d at 375–76 n. 3. Also, un-

like *Lane,* the State suggested that deliberate required "more thought process" [than intentional] or "on purpose" *and* with the expectation that death would occur. Therefore, unlike *Lane,* the State's hypotheticals did not misstate the definition of "intentional" and did not suggest that "deliberate" was actually a working definition of "intentional."

We also understand appellant to be arguing the State's defining "deliberate" as requiring "more thought process" was improper because it was not the common usage and meaning of that term. However, this is, in effect, the same basis this Court in several cases has distinguished "intentional" from "deliberate" conduct. See *Lane v. State,* 743 S.W.2d at 628. We find no error in the definition the State used for "deliberate."

■ Appellant also argues the State's hypotheticals were improper because they "merely describe acts of preparation which do not even cause a result." This argument overlooks the principle that "intentional" and "deliberate" are terms which describe *mental states* instead of completed acts. See V.T.C.A., Penal Code, Section 6.03(a); Article 37.071(b)(1), V.A.C.C.P. A person can possess a certain mental state without causing a result; therefore, hypotheticals which illustrate a type of mental state do not have to involve acts which "cause a result" for the purpose of explaining a certain mental state or distinguishing between different mental states.

■ Appellant also argues the State's hypotheticals were improper because they consisted of simplistic situations which had nothing to do with a capital murder case. Appellant cites no authority, and we are aware of none, that prohibits the State from using simple, noncriminal conduct hypotheticals to illustrate the distinction between "intentional" and "deliberate" conduct. See Tex.R.App.Pro. 74(f). We find no error simply because the State used simple hypotheticals. In fact, it might be desirable to use simple hypotheticals to illustrate difficult-to-distinguish terms in a capital murder case. Based on the totality of the voir dire, we cannot say the trial court abused its discretion in denying appellant's challenge for

cause to Payne. See *Satterwhite v. State,* 858 S.W.2d 412, 417 (Tex.Cr.App.1993).

Having determined the trial court did not err in denying appellant's challenge for cause to Payne, it is unnecessary to address whether it erroneously denied appellant's challenge for cause to Miller. We have reviewed Miller's voir dire and find that it is essentially the same as Payne's voir dire. The State used the same hypotheticals and Miller gave essentially the same responses as Payne. Therefore, the trial court did not err in denying appellant's challenge for cause to Miller. Appellant's points of error two and three are overruled.

■ In point of error one, appellant contends the trial court erred in denying appellant's instruction on self-defense because the evidence raised the issue of self defense. If the evidence raises the issue of self-defense, the accused is entitled to have it submitted to the jury. *Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Cr.App.1984) citing *Semaire v. State,* 612 S.W.2d 528 (Tex.Cr.App.1980). A person is justified in using deadly force against another only when: "(1) the defendant would have been justified in using force under § 9.31; (2) a reasonable person in the defendant's situation would not have retreated; and (3) the use of deadly force was reasonably believed to be immediately necessary to protect the defendant against another's use or attempted use of unlawful deadly force, or to prevent the imminent commission of specified violent crimes." *Werner v. State,* 711 S.W.2d 639, 644 (Tex.Cr.App.1986); V.T.C.A., Penal Code, Section 9.32.

■ Appellant testified that after the victim made homosexual advances toward him, he hit him in the head with the tire iron and got off the bed. Appellant remembered the victim raising his hands, grabbing his head and moaning. Thereafter, appellant hit the victim in the head at least fourteen more times. There was no testimony the victim ever attempted to sexually assault appellant or harm him in any way after the initial blow to the victim's head. Appellant did not testify he could not retreat or he attempted to retreat but was prevented from doing so. There was no evidence Bennett wielded a weapon which prevented appellant from leav-

ing. Appellant was not justified in his use of deadly force. V.T.C.A., Penal Code, Section 9.32. A reasonable person would have retreated without using deadly force and, therefore, appellant was not entitled to an instruction on self-defense. See *Martinez v. State,* 775 S.W.2d 645, 647 (Tex.Cr.App.1989); *Barree v. State,* 621 S.W.2d 776, 779 (Tex.Cr. App.1981) (on reh'g); *Sternlight v. State,* 540 S.W.2d 704, 705 (Tex.Cr.App.1976). Point of error one is overruled.

In points of error four, six, eight, ten, and twelve, appellant challenges the constitutionality of Texas' capital sentencing scheme, as applied in his case, under the Eighth and Fourteenth Amendments to the United States Constitution pursuant to *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In point of error four, appellant contends the trial court erred in overruling his objections to the punishment charge because the instructions on mitigation improperly limited the jury's consideration of his mitigating evidence to the special issues. In point of error six, appellant contends the jury could not give full consideration and effect to all relevant mitigating evidence because the trial court erred in overruling his objections to the definition of "mitigating evidence" in the court's charge. In point of error eight, appellant alleges the trial court erred in submitting a jury instruction that was hopelessly confusing and instructed the jury to disregard their oath under Article 35.22, V.A.C.C.P. In his tenth point of error, appellant asserts the trial court erred by refusing appellant's request for an additional special issue. Appellant's twelfth point of error alleges his death sentence is invalid because Article 37.071, V.A.C.C.P., limited the jury's consideration of mitigating evidence.

■ The record reflects the trial court submitted the following jury charge at the punishment phase of trial:

"If you determine, when giving effect to the mitigating evidence, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal moral culpability of the defendant, a negative finding should be given to that special issue under consideration."

The trial court also submitted the following definition in the charge:

"... A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character, background, or record, and the circumstances of the crime which you believe could make an affirmative answer to the special issue under consideration inappropriate in this case."

The instruction given here is nearly identical to the one this Court approved in *Fuller v. State,* 829 S.W.2d 191, 209 (Tex.Cr.App. 1992), cert. denied, ‌—— U.S. ——, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993). Here, as in *Fuller v. State,* the trial court's charge expressly authorized the jury to answer one or more of the special issues in the negative if it thought the evidence had sufficient "mitigating value of any kind." *See Id.* The charge was adequate to avoid the constitutional infirmity condemned by *Penry v. Lynaugh. See Id.* Points of error four, six, eight, ten, and twelve are overruled.

In point of error fourteen, appellant alleges his death sentence is invalid because Article 37.071(b)(1), V.A.C.C.P., is unconstitutionally vague. Appellant has not shown how Article 37.071(b)(1) is unconstitutionally vague and Article 37.071(b)(1) has consistently been held constitutional. See *Jurek v. Texas,* 428 U.S. 262, 274, 96 S.Ct. 2950, 2957, 49 L.Ed.2d 929, 939 (1976); *Motley v. State,* 773 S.W.2d 283, 286–87 (Tex.Cr.App.1989). Point of error fourteen is overruled.

■ In points of error five, seven, nine, eleven, thirteen and fifteen, appellant makes the same contentions as he does in points of error four, six, eight, ten, twelve and fourteen pursuant to Article I, Sections 13 and 19 of the Texas Constitution. Appellant merely adopts the arguments and authorities relied on to support his argument under the United States Constitution. The Texas Constitution may provide greater protection than the United States Constitution; however, each argument must be developed independently of the other. See *Elliott v. State,* 858 S.W.2d 478, 487 (Tex.Cr.App.1993); *Johnson v. State,* 853 S.W.2d 527, 533 (Tex.Cr.App. 1992),

cert. denied —— U.S. ——, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993); see also *Heitman v. State,* 815 S.W.2d 681 (Tex.Cr.App.1991). Because appellant fails to present any argument or authority as to how protection under the Texas Constitution differs from any protection guaranteed by the United States Constitution, his fifth, seventh, ninth, eleventh, thirteenth and fifteenth points of error are overruled.

In point of error sixteen, appellant contends the trial court erred in overruling his objection to the punishment charge because the special issues failed to apply the law of mitigating evidence. *Penry v. Lynaugh,* supra. A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue. See *Duffy v. State,* 567 S.W.2d 197, 204 (Tex.Cr. App.1978), cert. denied 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 666 (1978). The jury charge instructed the jury on what could be considered mitigating evidence and it allowed them to take mitigating circumstances into effect when answering the special issues. The jury was also instructed it could answer "no" to the special issues if they did not think death was an appropriate response to the personal moral culpability of appellant. Neither *Penry v. Lynaugh,* supra, nor the Eighth Amendment require the jury be told under what particular circumstances or facts it should answer "yes" or "no" to the special issues. The trial court's charge allowed the jury to give full effect to appellant's mitigating evidence. *Moody v. State,* 827 S.W.2d 875 (Tex.Cr.App.1992), cert. denied, —— U.S. ——, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992); *Lackey v. State,* 819 S.W.2d 111, 134 (Tex.Cr. App.1989). Point of error sixteen is overruled.

The judgment of the trial court is affirmed.

CLINTON, Judge, concurring.

I write only briefly to respond separately to appellant's second and fourth points of error.

### I.

Appellant argues in his second point of error that the prosecutor did not effectively rehabilitate a venireman who had manifested some difficulty articulating a distinction between "intentional" and "deliberate." As I understand him, he argues that the prosecutor's hypotheticals, by which he attempted to demonstrate a difference between the two terms, were deficient because they did not relate specifically to intentionally causing a *result* versus deliberately causing a *result.* This is critical, argues appellant, because capital murder is a result of conduct offense. Instead, the prosecutor's hypotheticals simply demonstrated an abstract distinction between the two terms, without attempting to plug that distinction into the statutory scheme.

I am not sure I understand the majority's response to this contention, but I agree it has no merit. A venireman who recognizes a distinction between "intentional" and "deliberate" in the abstract is not likely to have trouble distinguishing between intentionally causing a result and deliberately causing that result. The prosecutor's hypotheticals did not serve, as in *Lane v. State,* 743 S.W.2d 617 (Tex.Cr.App.1987) or *Martinez v. State,* 763 S.W.2d 413 (Tex.Cr.App.1988), positively to mislead the venireman to believe that intentionally engaging in conduct that causes death is sufficient to constitute capital murder, and "in thus diluting what is required of the State to prove an 'intentional' killing, ... [to] concomitantly endorse[ ] an artificially low threshold of proof to establish the killing was 'committed deliberately....'" *Martinez,* supra, at 420, n. 4, quoting *Morrow v. State,* 753 S.W.2d 372, at 376 (Tex.Cr.App. 1988). In my view the trial court was justified in finding venireman Payne was rehabilitated, and therefore did not err in failing to grant appellant's challenge for cause.

### II.

In his fourth point of error appellant complains that the trial court's attempted compliance with the dictates of *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). The majority disposes of this contention with the dubious observation that the instruction given by the trial court was "nearly identical" to one we approved in *Fuller v. State,* 829 S.W.2d 191, at 209 & n. 5 (Tex.Cr.App.1992). In my view, the instruction given in this cause is much more similar to one we found deficient in *Rios v. State,* 846 S.W.2d 310 (Tex.Cr.App.1992).

As with the instruction in *Rios,* the instruction here seems to be "a clumsy attempt

at jury nullification[.]" *Id.*, at 316. Also like the instruction in *Rios*, the one given here:

"does *not* clearly communicate ... that evidence that has no rational bearing whatsoever on special issues, or has only a tendency to militate in favor of affirmative answers, may nevertheless, if it has an independent mitigating impact, serve as the basis for answering one or more of the special issues 'no,' in spite of the jurors' oaths to answer special issues honestly, and in accordance with what they believe the *relevant* evidence shows. * * * In short, it simply does not adequately inform the jury that it may assess a punishment less than death on account of [mitigating evidence], irrespective of what the evidence shows as to deliberateness and future dangerousness."

*Id.*, at 316 & 317 (emphasis in the original). The instruction in *Fuller* was at least minimally adequate to serve this function. The instruction here is not.

"Without more explanation, an instruction that baldly tells the jury it may consider evidence to be mitigating that seems altogether irrelevant to the special issues, or relevant only in an aggravating sense, is likely in context of our scheme to confound rather than inform."

*Rios*, supra, at 317.

However, appellant is unable to identify any mitigating evidence that either cannot be accounted for in mitigating fashion within the confines of the special issues, see *Johnson v. Texas*, 509 U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993), or that this Court has seen fit to agree has mitigating significance apart from the special issues. *Penry* requires no instruction at all absent introduction of such evidence. That the trial court gave an insufficient *Penry* instruction is therefore not a basis to reverse appellant's conviction.

Accordingly, I concur in the result.

MILLER and BAIRD, JJ., join Part II of this opinion.