GONZALEZ V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-057-CR

ERIK RUEDA GONZALEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

Appellant Erik Rueda Gonzalez appeals from his conviction by a jury for the offense of capital murder.  Appellant argues three points on appeal.  In his first two points, appellant contends that the evidence is legally and factually insufficient to support the jury’s verdict.  In his third point, appellant argues that the trial court erred by failing to instruct the jury that it was required find that appellant had the specific intent to commit capital murder before it could convict appellant.  We affirm. 

Background Facts

On February 12, 2002, appellant, who was fifteen years old at the time, Chris Perez, and Mario Moreno were riding around in Moreno’s car.  Moreno was driving the car, appellant was sitting in the passenger seat, and Perez was sitting in the back seat.  After driving to a park, appellant and Moreno got into an argument over money that Moreno owed appellant. 
 
Appellant shot and killed Perez and Moreno and drove the car some distance before abandoning the car in a nearby neighborhood when the car had a flat tire.  Several hours later, a local resident found the abandoned car containing Perez and Moreno.  Appellant gave two conflicting statements to the police.  At trial, appellant gave a third version of the story.  A jury convicted appellant of two counts of capital murder, and the court assessed his punishment at life imprisonment. 

Sufficiency of the Evidence 

In his first two points appellant argues that the evidence is legally and factually insufficient to sustain his conviction for capital murder.  According to section 19.02(b)(1) of the penal code, a person commits murder if he “intentionally . . . causes the death of an individual.”   
Tex. Penal Code Ann.
 § 19.02(b)(1) (Vernon 2003).  A person commits capital murder if he commits murder as defined by section 19.02(b)(1) and murders more than one person in the same criminal transaction.  
Id
. ྷ 19.03(a)(7)(A) (Vernon Supp. 2004-05). 

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to
 the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).  
The standard of review is the same for direct and circumstantial evidence cases.  
Burden v. State
, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001); 
Kutzner v. State
, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).  

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.  In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

In the present case, Detective Mike Carroll testified that he went to appellant’s house on February 13, 2002 and asked him to go to the police station for questioning.  Detective Carroll testified that he noticed red stains on appellant’s shorts.  He testified that, when asked about the stains, appellant said that they were dog’s blood.  However, a preliminary test revealed that the stains were human blood.
(footnote: 2)  At trial, appellant testified that he did not remember telling Detective Carroll that the stains were dog’s blood. 

Appellant gave three different accounts of what happened on February 12, 2002.  In his first statement to the police, appellant said that he, Moreno, and Perez drove to a park and that Perez pulled out a silver gun and showed it to him.  The three men got out of the car and walked toward some benches.  Appellant and Moreno started to argue after appellant asked Moreno about some money that Moreno owed him.  Perez handed the gun to Moreno.  Appellant then pushed Moreno.  Perez held appellant from behind, and Moreno pointed the gun at appellant and said that they were only playing.  Appellant again pushed Moreno, causing Moreno to drop the gun.  Appellant picked up the gun, and Moreno and Perez ran to the car and got in.  Appellant then started shooting at them.  Appellant opened the passenger side door, got in, and started the car.  He moved Moreno’s body to the  passenger side and drove the car for a while before abandoning it in a nearby neighborhood when the car had a flat tire. 

After Detective Carroll told appellant that his story was not consistent with physical evidence recovered from the crime scene, appellant gave a second statement.  In his second statement, appellant said that he had not been completely honest in his first statement.  He stated that he, Moreno, and Perez drove to the park and sat in Moreno’s car, sniffing paint.  Appellant stated that Perez pulled out a silver gun and handed it to appellant.  Appellant and Moreno then began to argue about the money that Moreno owed appellant.  Appellant pointed the gun at Moreno, and Perez pushed appellant’s seat, causing him to drop the gun.  Appellant picked up the gun, and Perez tried to grab appellant’s hands.  Appellant shot Perez several times and then shot Moreno twice when Moreno tried to push him.  Appellant stated that he shot Perez four times and shot Moreno twice.  Appellant moved Moreno’s body to the passenger side and drove away.  Appellant abandoned the car after a tire went flat.  He threw the gun inside the car and ran home. 

Appellant testified at trial and gave a third version of the story.  He testified that Moreno and Perez were his friends.  Appellant testified that he had owned a .357 revolver and a .22 revolver previously but that he had sold the .357 and had given the .22 to Perez.  
He also testified that Moreno owed him money because they had stolen a stereo together and had agreed to sell it and split the proceeds.  On the night of February 12, 2002, the three drove to Rockwood Park to steal some rims in order to pay appellant.  Appellant testified that he was in the passenger seat, Moreno was driving, and Perez was in the backseat behind Moreno. 

While sitting in Moreno’s car at Rockwood Park, appellant and Moreno began to argue about the money that Moreno owed appellant.  Appellant testified that Perez pulled out a silver revolver and tried to aim it at him.  Appellant grabbed the gun, and the two struggled for the weapon.  Appellant testified that shots were fired during the struggle but that he did not remember how many.  Appellant was able to get the gun away from Perez.  Appellant shot Perez several times because he thought Perez was coming toward him.  Appellant then realized that Moreno had been shot, and appellant moved him to the passenger side and drove away.  Appellant testified that he could hear Moreno breathing
.  He testified that he wanted to take Moreno to a hospital but that he abandoned the car after it had a flat tire.  He testified that he ran home and that he did not know what happened to the gun. 

Dr. Daniel J. Konzelmann testified that Moreno had been shot twice and Perez had been shot four times.  He testified that both men died from their gunshot wounds.  Ronald Thomas Fazio, a senior firearms examiner for the Fort Worth Police Department, testified that the shots were fired from a .357 revolver.  Detective Carroll testified that he executed a search warrant on appellant’s house and found fired .357 cartridge casings, unfired .357 cartridges, and ammunition holders in appellant’s bedroom.  Luz Maria Puerta, Perez’s cousin, testified that the week before Perez and Moreno were shot, appellant came to her house and showed her and her other cousin Richard a revolver that he had. 

Appellant called Max Courtney, the owner and director of Forensic Consultant Services in Fort Worth.  Courtney testified that he reviewed offense reports, photographs, and other documents from appellant’s file.  He testified that the evidence suggested that Perez was moving around as he was being shot and that the gun was moving around as Moreno was being shot.  
Courtney also testified that the physical evidence did not disprove any part of appellant’s testimony at trial.  On cross-examination, however, Courtney testified that he could not say what actually happened in the car and that the evidence was consistent with the second statement that appellant gave to police. 

Detective Cheryl Johnson took appellant’s first statement.  She testified that appellant dictated his statement to a secretary who typed it out.  Detective Johnson also testified that she did not make an audio or video recording of the statement even though the equipment was available to her.  Similarly, Detective Carroll took appellant’s second statement but did not make an audio or video recording. 

Thus, the State’s evidence showed that (1) Moreno and Perez were killed by a .357 revolver, (2) appellant possessed a similar weapon a week before the murders, (3) appellant possessed unfired .357 cartridges and fired .357 cartridge casings when his house was searched the day after the murders, and (4) appellant was angry with Moreno because Moreno owed him money.  Appellant admitted to shooting Moreno and Perez but gave three different accounts of what had happened on February 12, 2002.  

As the fact finder, the jury was entitled to believe all, some, or none of any witness’s testimony.  
Sharp v. State
, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), 
cert. denied
, 488 U.S. 872 (1988).  Accordingly, the jury could have chosen to believe either of the two conflicting statements that appellant gave to police regarding what happened on February 12, 2002 and could have found appellant guilty of capital murder under either account.  Moreover, the jury could have chosen to not believe any of appellant’s versions of the story and still could have found that he intentionally caused the deaths of Perez and Moreno and that he committed both murders during the same criminal transaction because the police found Moreno’s blood on appellant’s shorts, which placed him at the scene at the time of the offense
.  

After viewing all the evidence in the light most favorable to
 the jury’s verdict, we hold that any rational trier of fact could have found that appellant committed capital murder beyond a reasonable doubt.  
Further, considering the evidence in a neutral light, we hold that the jury was rationally justified in finding appellant’s guilt beyond a reasonable doubt.  Therefore, we overrule appellant’s first two points.    
 

Jury Charge

In his third point, appellant argues that the trial court denied him his right to a jury trial and due process by not instructing the jury that it had to find that appellant intended for each murder to occur in the same criminal transaction in order to convict him of capital murder.  Appellant argues that the jury charge allowed the jury to convict him without finding all of the essential elements of capital murder. 

“A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue.”  
Riddle v. State
, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994), 
cert. denied
, 514 U.S. 1068 (1995).  According to section 19.03(a)(7)(A), a person commits capital murder if he commits murder as defined by section 19.02(b)(1) and murders more than one person in the same criminal transaction.  
Tex. Penal Code Ann.
 ྷ 19.03(a)(7)(A).

Here, in its charge to the jury, the trial court stated, “A person commits the offense of capital murder if he intentionally causes the death of an individual, and the person intentionally murders more than one person during the same criminal transaction.”  In the application portion of the jury charge, the jury was instructed,

Now, therefore, if you find and believe from the evidence beyond a reasonable doubt, that [appellant], in Tarrant County, Texas, on or about the 12th day of February, 2002, did then and there intentionally cause the death of an individual, Mario Moreno, by shooting Mario Moreno with a deadly weapon, to-wit: a firearm, and did then and there intentionally cause the death of an individual, Christopher Perez, by shooting Christopher Perez with a deadly weapon, to-wit: a firearm, and both murders were committed during the same criminal transaction, as charged in the indictment, then you will find [appellant] guilty of capital murder.

The trial court’s instruction tracks the statutory language of section 19.03(a)(7)(A).  
See id
.; 
Martinez v. State
, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996).  It requires the jury to find beyond a reasonable doubt that appellant intentionally caused the deaths of Moreno and Perez and that both murders were committed during the same criminal transaction in order to find appellant guilty of capital murder.  Further, appellant cites no authority that holds that a defendant must 
intend
 that the murders occur in the same criminal transaction in order to be convicted of capital murder.  Accordingly, we overrule appellant’s third point.     

Conclusion

Having overruled all of appellant’s points, we affirm the trial court’s judgment.  

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  June 23, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Later, a DNA test indicated that the stains were Moreno’s blood.