COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-057-CR
 
  
ERIK 
RUEDA GONZALEZ                                                         APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 371ST DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
Introduction
        Appellant 
Erik Rueda Gonzalez appeals from his conviction by a jury for the offense of 
capital murder. Appellant argues three points on appeal. In his first two 
points, appellant contends that the evidence is legally and factually 
insufficient to support the jury’s verdict. In his third point, appellant 
argues that the trial court erred by failing to instruct the jury that it was 
required find that appellant had the specific intent to commit capital murder 
before it could convict appellant. We affirm.
Background Facts
        On 
February 12, 2002, appellant, who was fifteen years old at the time, Chris 
Perez, and Mario Moreno were riding around in Moreno’s car. Moreno was driving 
the car, appellant was sitting in the passenger seat, and Perez was sitting in 
the back seat. After driving to a park, appellant and Moreno got into an 
argument over money that Moreno owed appellant. Appellant shot and killed Perez 
and Moreno and drove the car some distance before abandoning the car in a nearby 
neighborhood when the car had a flat tire. Several hours later, a local resident 
found the abandoned car containing Perez and Moreno. Appellant gave two 
conflicting statements to the police. At trial, appellant gave a third version 
of the story. A jury convicted appellant of two counts of capital murder, and 
the court assessed his punishment at life imprisonment.
Sufficiency of the Evidence
        In 
his first two points appellant argues that the evidence is legally and factually 
insufficient to sustain his conviction for capital murder. According to section 
19.02(b)(1) of the penal code, a person commits murder if he “intentionally . 
. . causes the death of an individual.” Tex. 
Penal Code Ann. § 19.02(b)(1) (Vernon 2003). A person commits capital 
murder if he commits murder as defined by section 19.02(b)(1) and murders more 
than one person in the same criminal transaction. Id. § 19.03(a)(7)(A) 
(Vernon Supp. 2004-05).
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).
        This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319, 
99 S. Ct. at 2789. The trier of fact is the sole judge of the weight and 
credibility of the evidence. See Tex. 
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal 
sufficiency review, we may not re-evaluate the weight and credibility of the 
evidence and substitute our judgment for that of the fact finder. Dewberry v. 
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000). We must resolve any inconsistencies in the evidence in favor 
of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 
2000). The standard of review is the same for direct and circumstantial evidence 
cases. Burden v. State, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001); Kutzner 
v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt. Id. at 484. There are two ways 
evidence may be factually insufficient: (1) the evidence supporting the verdict 
or judgment, considered by itself, is too weak to support the finding of guilt 
beyond a reasonable doubt; or (2) when there is evidence both supporting and 
contradicting the verdict or judgment, weighing all of the evidence, the 
contrary evidence is so strong that guilt cannot be proven beyond a reasonable 
doubt. Id. at 484-85. “This standard acknowledges that evidence of 
guilt can ‘preponderate’ in favor of conviction but still be insufficient to 
prove the elements of the crime beyond a reasonable doubt.” Id. at 485. 
In other words, evidence supporting a guilty finding can outweigh the contrary 
proof but still be insufficient to prove the elements of an offense beyond a 
reasonable doubt. Id. In performing a factual sufficiency review, we are 
to give deference to the fact finder’s determinations, including 
determinations involving the credibility and demeanor of witnesses. Id. 
at 481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). We may 
not substitute our judgment for that of the fact finder’s. Zuniga, 144 
S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the evidence. Id. 
at 484, 486-87. An opinion addressing factual sufficiency must include a 
discussion of the most important and relevant evidence that supports the 
appellant’s complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 
(Tex. Crim. App. 2003).
        In 
the present case, Detective Mike Carroll testified that he went to appellant’s 
house on February 13, 2002 and asked him to go to the police station for 
questioning. Detective Carroll testified that he noticed red stains on 
appellant’s shorts. He testified that, when asked about the stains, appellant 
said that they were dog’s blood. However, a preliminary test revealed that the 
stains were human blood.[2]  At trial, appellant 
testified that he did not remember telling Detective Carroll that the stains 
were dog’s blood.
        Appellant 
gave three different accounts of what happened on February 12, 2002. In his 
first statement to the police, appellant said that he, Moreno, and Perez drove 
to a park and that Perez pulled out a silver gun and showed it to him. The three 
men got out of the car and walked toward some benches. Appellant and Moreno 
started to argue after appellant asked Moreno about some money that Moreno owed 
him. Perez handed the gun to Moreno. Appellant then pushed Moreno. Perez held 
appellant from behind, and Moreno pointed the gun at appellant and said that 
they were only playing. Appellant again pushed Moreno, causing Moreno to drop 
the gun. Appellant picked up the gun, and Moreno and Perez ran to the car and 
got in. Appellant then started shooting at them. Appellant opened the passenger 
side door, got in, and started the car. He moved Moreno’s body to the 
passenger side and drove the car for a while before abandoning it in a nearby 
neighborhood when the car had a flat tire.
        After 
Detective Carroll told appellant that his story was not consistent with physical 
evidence recovered from the crime scene, appellant gave a second statement. In 
his second statement, appellant said that he had not been completely honest in 
his first statement. He stated that he, Moreno, and Perez drove to the park and 
sat in Moreno’s car, sniffing paint. Appellant stated that Perez pulled out a 
silver gun and handed it to appellant. Appellant and Moreno then began to argue 
about the money that Moreno owed appellant. Appellant pointed the gun at Moreno, 
and Perez pushed appellant’s seat, causing him to drop the gun. Appellant 
picked up the gun, and Perez tried to grab appellant’s hands. Appellant shot 
Perez several times and then shot Moreno twice when Moreno tried to push him. 
Appellant stated that he shot Perez four times and shot Moreno twice. Appellant 
moved Moreno’s body to the passenger side and drove away. Appellant abandoned 
the car after a tire went flat. He threw the gun inside the car and ran home.
        Appellant 
testified at trial and gave a third version of the story. He testified that 
Moreno and Perez were his friends. Appellant testified that he had owned a .357 
revolver and a .22 revolver previously but that he had sold the .357 and had 
given the .22 to Perez. He also testified that Moreno owed him money because 
they had stolen a stereo together and had agreed to sell it and split the 
proceeds. On the night of February 12, 2002, the three drove to Rockwood Park to 
steal some rims in order to pay appellant. Appellant testified that he was in 
the passenger seat, Moreno was driving, and Perez was in the backseat behind 
Moreno.
        While 
sitting in Moreno’s car at Rockwood Park, appellant and Moreno began to argue 
about the money that Moreno owed appellant. Appellant testified that Perez 
pulled out a silver revolver and tried to aim it at him. Appellant grabbed the 
gun, and the two struggled for the weapon. Appellant testified that shots were 
fired during the struggle but that he did not remember how many. Appellant was 
able to get the gun away from Perez. Appellant shot Perez several times because 
he thought Perez was coming toward him. Appellant then realized that Moreno had 
been shot, and appellant moved him to the passenger side and drove away. 
Appellant testified that he could hear Moreno breathing. He testified that he 
wanted to take Moreno to a hospital but that he abandoned the car after it had a 
flat tire. He testified that he ran home and that he did not know what happened 
to the gun.
        Dr. 
Daniel J. Konzelmann testified that Moreno had been shot twice and Perez had 
been shot four times. He testified that both men died from their gunshot wounds. 
Ronald Thomas Fazio, a senior firearms examiner for the Fort Worth Police 
Department, testified that the shots were fired from a .357 revolver. Detective 
Carroll testified that he executed a search warrant on appellant’s house and 
found fired .357 cartridge casings, unfired .357 cartridges, and ammunition 
holders in appellant’s bedroom. Luz Maria Puerta, Perez’s cousin, testified 
that the week before Perez and Moreno were shot, appellant came to her house and 
showed her and her other cousin Richard a revolver that he had.
        Appellant 
called Max Courtney, the owner and director of Forensic Consultant Services in 
Fort Worth. Courtney testified that he reviewed offense reports, photographs, 
and other documents from appellant’s file. He testified that the evidence 
suggested that Perez was moving around as he was being shot and that the gun was 
moving around as Moreno was being shot. Courtney also testified that the 
physical evidence did not disprove any part of appellant’s testimony at trial. 
On cross-examination, however, Courtney testified that he could not say what 
actually happened in the car and that the evidence was consistent with the 
second statement that appellant gave to police.
        Detective 
Cheryl Johnson took appellant’s first statement. She testified that appellant 
dictated his statement to a secretary who typed it out. Detective Johnson also 
testified that she did not make an audio or video recording of the statement 
even though the equipment was available to her. Similarly, Detective Carroll 
took appellant’s second statement but did not make an audio or video 
recording.
        Thus, 
the State’s evidence showed that (1) Moreno and Perez were killed by a .357 
revolver, (2) appellant possessed a similar weapon a week before the murders, 
(3) appellant possessed unfired .357 cartridges and fired .357 cartridge casings 
when his house was searched the day after the murders, and (4) appellant was 
angry with Moreno because Moreno owed him money. Appellant admitted to shooting 
Moreno and Perez but gave three different accounts of what had happened on 
February 12, 2002.
        As 
the fact finder, the jury was entitled to believe all, some, or none of any 
witness’s testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. 
App. 1986), cert. denied, 488 U.S. 872 (1988). Accordingly, the jury 
could have chosen to believe either of the two conflicting statements that 
appellant gave to police regarding what happened on February 12, 2002 and could 
have found appellant guilty of capital murder under either account. Moreover, 
the jury could have chosen to not believe any of appellant’s versions of the 
story and still could have found that he intentionally caused the deaths of 
Perez and Moreno and that he committed both murders during the same criminal 
transaction because the police found Moreno’s blood on appellant’s shorts, 
which placed him at the scene at the time of the offense.
        After 
viewing all the evidence in the light most favorable to the jury’s verdict, we 
hold that any rational trier of fact could have found that appellant committed 
capital murder beyond a reasonable doubt. Further, considering the evidence in a 
neutral light, we hold that the jury was rationally justified in finding 
appellant’s guilt beyond a reasonable doubt. Therefore, we overrule 
appellant’s first two points.
Jury Charge
        In 
his third point, appellant argues that the trial court denied him his right to a 
jury trial and due process by not instructing the jury that it had to find that 
appellant intended for each murder to occur in the same criminal transaction in 
order to convict him of capital murder. Appellant argues that the jury charge 
allowed the jury to convict him without finding all of the essential elements of 
capital murder.
        “A 
jury charge which tracks the language of a particular statute is a proper charge 
on the statutory issue.” Riddle v. State, 888 S.W.2d 1, 8 (Tex. Crim. 
App. 1994), cert. denied, 514 U.S. 1068 (1995). According to section 
19.03(a)(7)(A), a person commits capital murder if he commits murder as defined 
by section 19.02(b)(1) and murders more than one person in the same criminal 
transaction. Tex. Penal Code Ann. 
§ 19.03(a)(7)(A).
        Here, 
in its charge to the jury, the trial court stated, “A person commits the 
offense of capital murder if he intentionally causes the death of an individual, 
and the person intentionally murders more than one person during the same 
criminal transaction.” In the application portion of the jury charge, the jury 
was instructed,
   
Now, therefore, if you find and believe from the evidence beyond a reasonable 
doubt, that [appellant], in Tarrant County, Texas, on or about the 12th day of 
February, 2002, did then and there intentionally cause the death of an 
individual, Mario Moreno, by shooting Mario Moreno with a deadly weapon, to-wit: 
a firearm, and did then and there intentionally cause the death of an 
individual, Christopher Perez, by shooting Christopher Perez with a deadly 
weapon, to-wit: a firearm, and both murders were committed during the same 
criminal transaction, as charged in the indictment, then you will find 
[appellant] guilty of capital murder.
  
 
The 
trial court’s instruction tracks the statutory language of section 
19.03(a)(7)(A). See id.; Martinez v. State, 924 S.W.2d 693, 699 
(Tex. Crim. App. 1996). It requires the jury to find beyond a reasonable doubt 
that appellant intentionally caused the deaths of Moreno and Perez and that both 
murders were committed during the same criminal transaction in order to find 
appellant guilty of capital murder. Further, appellant cites no authority that 
holds that a defendant must intend that the murders occur in the same 
criminal transaction in order to be convicted of capital murder. Accordingly, we 
overrule appellant’s third point.
Conclusion
        Having 
overruled all of appellant’s points, we affirm the trial court’s judgment.
  
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
 
  
  
PANEL 
A:   CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
June 23, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Later, a DNA test indicated that the stains were Moreno’s blood.