# PD-0929-15

PD-0929-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/23/2015 11:47:13 AM
Accepted 7/24/2015 10:52:28 AM
ABEL ACOSTA
CLERK

**PD-_____-15**

In the Court of Criminal Appeals of Texas
At Austin

———————◆———————

No. 14-13-00706-CR

In the Court of Appeals
For the Fourteenth District of Texas
At Houston

———————◆———————

No. 1836127
In County Criminal Court at Law Fifteen
Of Harris County, Texas

———————◆———————

FILED IN
COURT OF CRIMINAL APPEALS

July 24, 2015

ABEL ACOSTA, CLERK

**Joel Navarro**
*Appellant*
*v.*
**The State of Texas**
*Appellee*

———————◆———————

## State's Petition for Discretionary Review

———————◆———————

**Devon Anderson**
District Attorney
Harris County, Texas

**Lauren Clemons**
**Shannon Drehner**
Assistant District Attorneys
Harris County, Texas

**Clinton A. Morgan**
Assistant District Attorney
Harris County, Texas
State Bar No. 24071454
morgan_clinton@dao.hctx.net

1201 Franklin St., Suite 600
Houston, Texas 77002
Telephone: 713.755.5826

Oral Argument Requested

## Statement Regarding Oral Argument

The State's first question for review regards a new burden the Court of Appeals has placed on trial courts to modify statutory definitions if the jury might get confused by the statutory text. This is a far-reaching holding that could apply in numerous situations beyond the facts of the present case. The State believes the back-and-forth of oral argument would help this Court explore and understand the ramifications of the Court of Appeals's holding.

The State's second question for review concerns an incorrect trial procedure that occurred in this case and seems to occur throughout the state without the appellate courts noticing. Because of the sheer number of cases in which this incorrect procedure seems to occur, oral argument would be appropriate.

## Identification of the Parties

Counsel for the State:

      Devon Anderson
          —— District Attorney of Harris County

      Lauren Clemons & Shannon Drehner
          — Assistant District Attorneys at trial

      Clinton A. Morgan
          —— Assistant District Attorney on appeal
             1201 Franklin St.
             Suite 600
             Houston, Texas 77002

Appellant:

      Joel Navarro

Counsel for the Appellant:

      Scott Shearer
          — Counsel at trial and on appeal
             92 Preston, Suite 200
             Houston, Texas 77002

Trial Judge:

      Jean Spradling Hughes
          —— Presiding judge

# Table of Contents

Statement Regarding Oral Argument .................................................i

Identification of the Parties ............................................ ii

Table of Contents.......................................................... iii

Index of Authorities ...........................................................v

Statement of the Case ...................................................1

Statement of Procedural History .......................................1

Statement of Questions Presented ....................................2

**Factual and Legal Background**

I.   Legal misinterpretations in the trial court complicated what should have been an open-and-shut case........................................3

II.  In a published opinion, a divided panel of the court of appeals acquitted the appellant of Class A DWI and remanded for a new trial on Class B DWI. A dissenter would have acquitted on Class A DWI but affirmed the Class B conviction. The State believes the dissenter was correct. ...............................................5

**Question One**

Does a trial court commit error by instructing the jury with a statutory definition if the statutory text "has a variable meaning in the eyes of the jury," as the panel majority held? ....................................6

I.   The majority used irrelevant case law as a basis to ignore binding precedent. ............................................7

II.  The majority's conclusion that a trial court errs to instruct a jury using statutory text if that text "has a variable meaning in the eyes of the jury" is inconsistent with prior case law. ........................... 10

III. The majority's rule puts trial courts in a nearly impossible situation of determining when instructing the jury with a non-statutory definition is required, and when instructing the jury with a non-statutory definition is error................................................ 13

**Question Two**

Is an allegation that elevates a Class B DWI to a Class A DWI (such as a prior DWI conviction or an alcohol concentration of 0.15 or greater) a punishment enhancement, as the trial court treated it, or an essential element of the Class A offense, as the Court of Appeals held? ............... 15

I.     Under *Calton*, these additional allegations are elements of Class A DWI, not punishment enhancements......................................................... 17

II.    The case law shows that it is very common for courts to treat these elements as punishment enhancements. ...................................... 18

III.   This practice is never questioned because, procedurally, it is almost impossible to raise it on appeal. This Court should grant review of this case because it presents an extremely uncommon opportunity for this Court to educate the bench and bar on this subject. ................................................................................................... 21

Conclusion ................................................................................. 23

Certificate of Compliance and Service ........................................... 24

Appendix A

*Navarro v. State*, __ S.W.3d __, 14-13-00706-CR, 2015 WL 4103565 (Tex. App.—Houston [14th Dist.] July 7, 2015) (majority op.)

Appendix B

*Navarro v. State*, __ S.W.3d __, 14-13-00706-CR, 2015 WL 4103565 (Tex. App.—Houston [14th Dist.] July 7, 2015) (Frost, C.J., dissenting)

# Index of Authorities

**Cases**

*Apprendi v. New Jersey*
530 U.S. 466 (2000) ........................................................................ 17

*Calton v. State*
176 S.W.3d 231 (Tex. Crim. App. 2005) .................................... 17, 18

*Casey v. State*
215 S.W.3d 870 (Tex. Crim. App. 2007) ....................................... 10

*Clift v. State*
05-13-00324-CR, 2014 WL 1856842 (Tex. App.—
Dallas May 7, 2014, no pet.)
(mem. op. not designated for publication) .................................... 20

*Couch v. State*
13-13-00389-CR, 2014 WL 585849 (Tex. App.—
Corpus Christi Feb. 13, 2014, pet. ref'd)
(mem. op. not designated for publication) .................................... 20

*Coward v. State*
12-13-00114-CR, 2013 WL 3788162 (Tex. App.—
Tyler July 17, 2013, no pet.)
(mem. op. not designated for publication) .................................... 20

*Dromgoole v. State*
__ S.W.3d __, 01-13-00931-CR, 2015 WL 3522990 (Tex. App.—
Houston [1st Dist.] June 4, 2015, no. pet. h.) ............................... 18

*Flowers v. State*
220 S.W.3d 919 (Tex. Crim. App. 2007) ....................................... 19

*Geesa v. State*
820 S.W.2d 154 (Tex. Crim. App. 1991) ....................................... 11

*Grotti v. State*
273 S.W.3d 273 (Tex. Crim. App. 2008) ....................................... 12

*Haeker v. State*
571 S.W.2d 920 (Tex. Cirm. App. 1978) ....................................... 7, 8

*Kirsch v. State*
   357 S.W.3d 645 (Tex. Crim. App. 2012) ........................................................12, 14

*Medford v. State*
   13 S.W.3d 769 (Tex. Crim. App. 2000) ...........................................................8

*Middleton v. State*
   125 S.W.3d 450 (Tex. Crim. App. 2003) ..........................................................8

*Navarro v. State*
   __ S.W.3d __, 14-13-00706-CR, 2015 WL 4103565 (Tex. App.—
   Houston [14th Dist.] July 7, 2015) ........................................................2, 7, 16

*Ouellette v. State*
   03-08-00566-CR, 2010 WL 3377774 (Tex. App.—
   Austin Aug. 27, 2010) *aff'd,* 353 S.W.3d 868 (Tex. Crim. App. 2011)
   (mem. op. not designated for publication) ........................................................ 21

*Paulson v. State*
   28 S.W.3d 570 (Tex. Crim. App. 2000) ........................................................... 11

*Reeves v. State*
   420 S.W.3d 812 (Tex. Crim. App. 2013) .......................................................... 10

*Riddle v. State*
   888 S.W.2d 1 (Tex. Crim. App. 1994) ...........................................................7

*State v. Mays*
   967 S.W.2d 404 (Tex. Crim. App. 1998) ..........................................................8

*State v. Morgan*
   160 S.W.3d 1 (Tex. Crim. App. 2004) .............................................................. 21

## Statutes

TEX. PENAL CODE § 49.01 .............................................................................................6

TEX. PENAL CODE § 49.04 ........................................................................................... 17

TEX. PENAL CODE § 49.09 ........................................................................................... 17

## Statement of the Case

The appellant was charged by information with driving while intoxicated, with a blood-alcohol concentration of 0.15 or greater. (CR 8). The appellant pled not guilty. (3 RR 10). A jury found the appellant guilty of driving while intoxicated. (CR 125, 126). The trial court treated the question of whether the appellant's blood-alcohol concentration was greater than 0.15 as a punishment-phase question, and the trial court found the allegation true. (3 RR 389). The trial court sentenced the appellant to one year's confinement in the county jail, but suspended that sentence and ordered that the appellant serve two years' community supervision. (CR126). The trial court certified the appellant's right of appeal, and the appellant filed a timely notice of appeal. (CR 133, 136).

## Statement of Procedural History

On May 28, 2015, in a published opinion and over a dissent, a panel of the Fourteenth Court of Appeals found the evidence insufficient regarding Class A driving while intoxicated and remanded the case for a new trial on Class B driving while intoxicated. The dissenter also found the evidence insufficient regarding the Class A conviction but would

1

have affirmed the conviction for the Class B offense and remanded for a new punishment hearing. On June 5, the State filed a timely motion for rehearing. On July 7, the panel issued substitute majority and dissenting opinions that were substantially the same as the May 28th opinions, and denied the State's motion for rehearing. *See Navarro v. State*, ___ S.W.3d ___, 14-13-00706-CR, 2015 WL 4103565 (Tex. App.—Houston [14th Dist.] July 7, 2015) (majority op. and op. of Frost, C.J., dissenting) (opinions included in appendix).

## Statement of Questions Presented

**Question One:** Does a trial court commit error by instructing the jury with a statutory definition if the statutory text "has a variable meaning in the eyes of the jury," as the panel majority held?

**Question Two:** Is an allegation that elevates a Class B DWI to a Class A DWI (such as a prior DWI conviction or an alcohol concentration of 0.15 or greater) a punishment enhancement, as the trial court treated it, or an essential element of the Class A offense, as the Court of Appeals held?

## Factual and Legal Background

**I. Legal misinterpretations in the trial court complicated what should have been an open-and-shut case.**

On Christmas, 2011, the appellant was driving his truck on I-10 when, at 65-70 miles per hour, he made an abrupt left turn and crashed into the median. (3 RR 16, 68-61). The appellant and his passenger were both taken to the hospital; blood tests showed them both to be intoxicated. (3 RR 253-55, 345, 354).

At the appellant's DWI trial, the State introduced the results of a blood-plasma test conducted at the hospital. (3 RR 231). Blood plasma is produced by seperating blood into its constituent parts. During this process, any alcohol that was in the blood will remain with the plasma, while the blood cells will be separated out. Thus, any testing performed on the plasma will yield a higher alcohol concentration than if the test had been performed on the whole, unseparated blood sample. For an ordinary, healthy person, a blood-plasma test will show an alcohol concentration about 16% higher than would a test of the whole blood. (3 RR 231). The State's expert witness testified that the results of the hospital's tests showed that the appellant's blood plasma had an alcohol concentration of .158, which meant that that his whole, unseperated

3

blood probably had an alcohol concentration of about .132. (3 RR 231, 253-55).

The trial prosecutor argued that, because the Penal Code did not define "blood," the jury could use the blood-plasma result as a basis for its verdict. (*See* 3 RR 237-40, 383-84) (citing *Reidwig v. State*, 981 S.W.2d 399 (Tex. App.—San Antonio 1998, pet. ref'd). However, when the case was submitted to the jury it was only submitted as a Class B offense, which required a showing only of an alcohol concentration of 0.08 or greater, thus the extrapolated blood result would have been more than adequate to prove intoxication. The jury found the appellant guilty of Class B DWI. (*See* CR 120-125).

During the punishment phase, without discussion or argument, the trial court announced that it "would find the enhancement paragraph true as to the blood alcohol level .15 or greater." (3 RR 389). The trial court assessed punishment and entered a judgment of guilt for Class A DWI. (CR 126 (judgment reflecting conviction for "DWI BAC>=0.15")).

**II. In a published opinion, a divided panel of the court of appeals acquitted the appellant of Class A DWI and remanded for a new trial on Class B DWI. A dissenter would have acquitted on Class A DWI but affirmed the Class B conviction. The State believes the dissenter was correct.**

On direct appeal, a divided panel of the Fourteenth Court of Appeals made several holdings:

1) In a prosecution for Class A driving while intoxicated with a blood-alcohol concentration greater than 0.15, the allegation that the defendant's blood-alcohol concentration exceeded 0.15 was an element of the offense rather than a punishment-phase enhancement;

2) Because "alcohol concentration" had to be based on blood, not blood plasma, the evidence was insufficient to show the appellant's blood-alcohol concentration was greater than 0.15, thus the court issued an acquittal on the Class A charge;

3) The evidence was sufficient to support the conviction for Class B driving while intoxicated; but

4) The trial court erred by not modifying the statutory definition of "alcohol concentration" in the jury charge to clarify that "blood" meant "whole blood," and the appellant was harmed by this error, thus the court remanded for a new trial on the Class B charge.

In a dissent, Chief Justice Frost agreed with holdings 1-3, but disagreed with holding 4 and would have affirmed the appellant's conviction for Class B DWI. *Navarro,* No. 14-13-00706-CR, Dissenting Slip Op. at 8 (Frost, C.J., dissenting). Chief Justice Frost argued that the trial court's instruction to the jury was correct because it tracked the

5

language of the statute, and, even if it was incorrect, the appellant was not harmed. *Ibid.*

In this petition, the State asks this Court to review holdings 1 and 4. Holding 4 is an unprecedented departure from the well-established rule that a trial court does not err to use statutory language to instruct a jury. Regarding holding 1, the State believes the court of appeals is correct, but the holding regards an important question of state law that should be decided by this Court.

## Question One

**Does a trial court commit error by instructing the jury with a statutory definition if the statutory text "has a variable meaning in the eyes of the jury," as the panel majority held?**

Because the parties had been arguing about the distinction between blood and blood plasma throughout the trial, the appellant requested the trial court instruct the jury that "[a]lcohol concentration means the number of grams of alcohol per 100 milliliters of *whole* blood." (3 RR 367 (emphasis added)). This proposed instruction consists of the text of Penal Code section 49.01(1)(B), plus the word "whole." *See* TEX. PENAL CODE § 49.01(1)(B). The trial court rejected the appellant's

6

proposed instruction and instead instructed the jury using the unmodified statutory text. (3 RR 367; CR 12).

The court of appeals held that the trial court's instruction was erroneous. *See Navarro*, Dissenting Slip Op. at 2 (Frost, C.J., dissenting) ("In an apparent first in the history of Texas jurisprudence, the majority holds the trial court erred in defining a term for the jury using the same unambiguous language the Texas Legislature used to define the term in the statute establishing the charged offense." ).

## I. The majority used irrelevant case law as a basis to ignore binding precedent.

The majority began its discussion by acknowledging binding precedent holding that a trial court does not err by submitting a jury charge that tracks the language of the statute, which is what the trial court did in this case. *See Navarro*, Slip Op. at 16 (citing *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994)). The majority then noted, however, that this Court has "not always adhered to" that rule. Slip Op. at 17.

For examples of how this Court has "not always adhered to" the general rule, the majority cited to *Haeker v. State*, 571 S.W.2d 920 (Tex. Cirm. App. 1978), and *State v. Mays*, 967 S.W.2d 404 (Tex. Crim. App.

7

1998). Slip Op. at 17. Those cases dealt with the issue of when a charging instrument must allege more than the statutory text in order to meet constitutional notice requirements. *See Haeker*, 571 S.W.2d at 921 (in cruelty-to-animals prosecution, allegation that defendant "tortured" an animal was insufficient to allow defendant to prepare defense); *Mays*, 967 S.W.2d at 407-09 (barratry indictment that tracked statutory language provided sufficient notice).

*Haeker* and *Mays* have no application here. Those cases addressed the State's constitutional obligation to provide pre-trial notice to defendants so that they may prepare a defense. This case dealt with the trial court's statutory obligation to instruct the jury on "the law applicable to the case" so that it can render a lawful verdict. There is no connection between those areas of the law, and the majority opinion erred to use *Haeker* and *Mays* as a basis for ignoring clearly established precedent.

The majority also relied on *Medford v. State*, 13 S.W.3d 769 (Tex. Crim. App. 2000), and *Middleton v. State*, 125 S.W.3d 450 (Tex. Crim. App. 2003). Slip Op. at 17. In *Middleton*, this Court granted review to determine whether it was necessary to instruct the jury with a non-statutory definition of "probable cause," but the Court did not answer

8

that question because, upon closer examination, it was apparent that "the jury did not need the instruction." 125 S.W.3d at 451 (plurality op.). Moreover, whatever *Middleton* said is not binding because it was a plurality opinion.

In *Medford*, this Court was faced with the question of whether "arrest," as that term is used in Penal Code section 38.08 (escape), was a statutorily undefined term that a jury was free to define on its own. 13 S.W.3d at 771. This Court held that "arrest" was an exception to the general rule because it was a technical term "possessing a long, established history in the common law," and jurors ought not define it on their own. *Id*. at 772. This Court created a non-statutory definition "in order to properly instruct a jury." *Id.* at 772-74.

*Medford* is more applicable to this case than the other three cases cited by the majority, but it still is far from controlling. As Chief Justice Frost observed in dissent, *Medford* did not involve a holding that a trial court abused its discretion by failing to submit a non-statutory instruction. Dissenting Slip Op. at 3 n.5. Moreover, unlike "arrest," "blood" is not a technical term or a term that has been defined through centuries of common law. *Ibid*.

9

In short, the majority noted that according to binding precedent the trial court was correct to instruct the jury using statutory language; the majority then proceeded to ignore that binding precedent based on the authority of two irrelevant cases, a plurality opinion that explicitly refused to address the question at issue in this case, and an opinion that touched on some of the issues in this case but which made no holding requiring the outcome the majority reached. This Court should not allow a lower court to so lightly toss aside the well-developed rule that a trial court does not err to instruct the jury using statutory language. *See e.g., Casey v. State*, 215 S.W.3d 870, 887 (Tex. Crim. App. 2007) (holding instruction that tracked statutory language was not erroneous, and "declin[ing] appellant's invitation to act as a super-legislature and rewrite this section of the Penal Code.").

**II.    The majority's conclusion that a trial court errs to instruct a jury using statutory text if that text "has a variable meaning in the eyes of the jury" is inconsistent with prior case law.**

After discussing *Haeker, Mays*, *Medford*, and *Middleton,* the majority proceeded to quote *Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013), for the proposition that "it is the function of the [jury] charge to lead and to prevent confusion." Slip. Op. at 17. The majority

10

then stated: "A charge will not prevent confusion if the statutory text on which it is based has a variable meaning in the eyes of the jury." *Ibid*.

This is an extremely broad assertion that, as a statement of what constitutes reversible error, must surely be wrong. A typical jury charge will contain dozens of words and terms that will have "variable meaning" in the eyes of the jury.

The most obvious example is the burden of proof: "beyond a reasonable doubt." In *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991), based on concerns that juries would be confused by what was meant by "beyond a reasonable doubt," this Court mandated a non-statutory six-paragraph definition of the term. *Geesa*, 820 S.W.2d at 163. This Court has since overruled that holding, and jurors are allowed to adopt their own meanings of "beyond a reasonable doubt," despite the near certainty that this will produce variable meaning from one juror to the next. *See Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000) (overruling *Geesa* and stating that it is the "better practice" to give no definition of "reasonable doubt").

Indeed, contra the majority's interpretation of *Reeves*, this Court has used the fact that jurors might give variable meanings to a word as a reason *not* to define it in the jury charge. In *Kirsch v. State*, 357 S.W.3d

11

645 (Tex. Crim. App. 2012), a DWI case, the trial court instructed the jury on a non-statutory definition of "operate" that was gleaned from case law. *Kirsch*, 357 S.W.3d at 648. This Court held that this was error, because "operate" was a common term that the jury was free to define on its own, therefore the trial court's decision to select a definition that brought attention to certain evidence — even if that definition was legally correct — was an impermissible comment on the weight of the evidence. *Id*. at 649-51.

In this case, the majority distinguished *Kirsch* by noting that unlike "operate," "'blood' is capable of only one meaning under the Penal Code." Slip. Op. at 19. That statement was based on an earlier part of the majority's opinion where, in conducting a sufficiency analysis, it looked to an opinion from this Court, a dictionary, medical texts, and an inapplicable section of the Penal Code to determine what is meant by "blood." *See* Slip. Op. at 14-15. The State wholeheartedly agrees that, for sufficiency-review purposes, the use of non-statutory sources was appropriate. *See Grotti v. State*, 273 S.W.3d 273, 282-83 (Tex. Crim. App. 2008) (approving of lower court's use of Health & Safety Code definition of "death" for sufficiency review).

Where the majority went wrong, however, was in its belief that the inverse of *Kirsch* must be true. In *Kirsch*, because the term "operate" was susceptible to multiple definitions, the trial court erred in submitting a non-statutory definition; in this case, because "blood" is *not* susceptible to multiple definitions, the majority believed that the trial court erred in *not* submitting a non-statutory definition. However, the inverse of a true proposition is not always true, and the majority provided no reason why the inverse of *Kirsch* must be true here.

III. **The majority's rule puts trial courts in a nearly impossible situation of determining when instructing the jury with a non-statutory definition is required, and when instructing the jury with a non-statutory definition is error.**

Combining the majority's holding with *Kirsch* creates the following rule: If a term that is not defined in the statute is susceptible to only one definition, the trial court errs by not instructing the jury on that definition, but if the term is susceptible to multiple definitions, the trial court errs to instruct the jury on any of those definitions. The State believes this needlessly puts trial courts at risk of reversible error, and will result in jury instructions with no basis in the law.

Under the majority's rule, if a party requests a non-statutory definition of a statutory term, a trial court must answer two questions,

13

and it will commit error if it gets either question incorrect: (1) Whether the proffered definition is legally correct; and (2) Whether it defines a term that is susceptible to multiple definitions. Seldom will the answers to these questions be obvious, and there is no obligation on the requesting party to advise the trial court of the law.[1] As *Kirsch* made apparent, determining whether a term is susceptible to multiple definitions can be a complex analysis. *See Kirsch*, 357 S.W.3d at 650.

Analyzing the new obligation that the majority created for trial courts, it is apparent that it will heavily favor defendants over the State. Faced with reversible error from so many directions, trial courts will probably respond to the obligations created by the majority's opinion by granting requested non-statutory instructions for defendants but denying them for the State. This is because jury-charge rulings that go against the State can never create a reversal. The majority's opinion will encourage defendants to proffer non-statutory definitions, and incentivize trial courts to instruct on those definitions even if they are legally suspect.

---

[1] The appellant provided no legal argument when he requested the "whole blood" instruction in this case. (3 RR 366).

14

The majority's holding creates bad incentives for trial courts, has no basis in the law, and directly contradicts binding precedent from this Court. This Court should grant review, reverse the Court of Appeals, and re-affirm the well-established rule that a trial court does not err to instruct the jury using statutory language.

**Question Two**

**Is an allegation that elevates a Class B DWI to a Class A DWI (such as a prior DWI conviction or an alcohol concentration of 0.15 or greater) a punishment enhancement, as the trial court treated it, or an essential element of the Class A offense, as the Court of Appeals held?**

The appellant was charged with DWI, enhanced by an allegation that an analysis of a specimen of his blood showed an alcohol concentration of 0.15 or greater. (CR 8). However, whether the appellant's blood alcohol concentration was 0.15 or greater was never submitted to the jury; the trial court made a finding on the matter during the punishment phase. (CR 120-25; 3 RR 389). In making this finding, the trial court stated that it was finding the 0.15 allegation "true," indicating that it viewed the 0.15-allegation as a punishment-phase enhancement (such as a deadly-weapon finding) rather than an element of the offense.

15

On appeal, the appellant did not challenge the sufficiency of the evidence. The State, however, made a confession of unassigned error, pointing out that the evidence was insufficient to show that the appellant's blood-alcohol concentration was 0.15 or greater. (State's Appellate Brief at 17-20). As part of this confession, the State argued that it was "almost certainly error" for the trial court to treat the 0.15 allegation as a punishment-phase enhancement rather than as an element of the offense. (State's Appellate Brief at 20 n.1).

The majority opinion explicitly agreed with the State that the 0.15 allegation was an element of the offense that should have been submitted to the jury during the guilt phase; the dissenting opinion implicitly agreed with that position. *See Navarro*, Slip. Op. at 11-13 (analyzing issue), Dissenting Slip Op. at 8 (concluding that evidence was insufficient regarding Class A offense). The State believes this issue is important enough, and that cases presenting it on appeal are rare enough, that this Court should grant review in order to affirm and promulgate the court of appeals's holding.

**I. Under *Calton*, these additional allegations are elements of Class A DWI, not punishment enhancements.**

This issue is, legally speaking, very easy and straight-forward. Section 49.04(d) states that DWI, ordinarily a Class B misdemeanor, becomes a Class A misdemeanor if it is shown at trial that an analysis of a specimen of the defendant's blood, breath, or urine showed an alcohol concentration of 0.15 or higher. TEX. PENAL CODE § 49.04(d). Any fact that elevates the degree of an offense is an essential element of the offense, and must be proven during the guilt phase. *Calton v. State*, 176 S.W.3d 231, 233-36 (Tex. Crim. App. 2005); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (other than fact of prior conviction, any fact that increases the maximum punishment for an offense must be proven to a jury beyond a reasonable doubt).

Therefore, the 0.15 allegation was an essential element of Class A DWI and should have been submitted to the jury during the guilt phase of this trial. The same principle also means that the fact of a single prior DWI conviction, which elevates a Class B offense to a Class A offense, *see* TEX. PENAL CODE § 49.09(a), should be submitted to the jury during the guilt phase as well. *See Calton*, 176 S.W.3d at 235 (if prior conviction is element of offense, allegation of prior conviction must be read to jury in

17

arraignment and issue must be submitted during guilt phase). Pleading and proving these additional elements during the guilt phase should be no different from pleading and proving the value of stolen property in a theft case. *See id.*at 235.

## II. The case law shows that it is very common for courts to treat these elements as punishment enhancements.

That the question is easy to answer as a matter of law does not mean that the question is unimportant. The State has very good reason to believe that treating the 0.15 allegation and the allegation of a single prior DWI conviction as a punishment-phase enhancement rather than a guilt-phase element is a common practice in Texas.[2]

---

[2] At oral argument in this case, the State's appellate counsel represented to the Fourteenth Court that six of Harris County's fifteen misdemeanor courts treat these allegations as punishment-phase enhancements. A week after the Fourteenth Court's original opinion in this case, the First Court released an opinion from another Harris County misdemeanor court in which the 0.15 allegation was treated as a punishment-phase enhancement.

In *Dromgoole v. State*, __ S.W.3d __, 01-13-00931-CR, 2015 WL 3522990, (Tex. App.—Houston [1st Dist.] June 4, 2015, no. pet. h.), the First Court of Appeals noted in its procedural history of the case that the jury found the defendant guilty of DWI, and during the punishment phase "the trial court found an enhancement paragraph to be true." *Dromgoole*, 2015 WL 3522990 at *1. In the last section of the opinion, though, the First Court noticed that the judgment showed "the trial court's finding on the State's enhancement paragraph was 'n/a.'" *Dromgoole*, 2015 WL 352290 at *14. Citing to Penal Code section 49.04(d) (the 0.15 allegation), the First Court noted that it was the "enhancement paragraph" that elevated the offense from a Class B to a Class A, thus without the finding of true on the "enhancement paragraph" Dromgoole's sentence would be illegal. *Ibid*. The First Court then, on its own motion, modified the judgment to show a finding of "true" to the "enhancement paragraph." *Ibid*. The First Court's opinion is nearly nine thousand words long, and

This is not just a Harris County problem. In *Flowers v. State*, 220 S.W.3d 919 (Tex. Crim. App. 2007), a Denton County case, the defendant was charged with DWI and the State alleged a prior conviction that enhanced the offense to a Class A misdemeanor. *Flowers*, 220 S.W.3d at 920.[3] The issue of guilt on basic DWI was tried to a jury, but the "enhancement paragraph" was found "true" by the trial court during the punishment phase. *Ibid*. Both the Second Court of Appeals and this Court issued opinions addressing the sufficiency of the evidence to prove the "enhancement paragraph," but no one ever pointed out that, under *Calton*, the allegation of a prior conviction was actually an essential element that should have been tried to the jury in the guilt phase.

A Westlaw search shows that it is common and widespread across the state to treat as punishment-phase enhancements allegations that elevate DWI from Class B to Class A, and for this matter to go wholly

West has given it fifty-four headnotes, yet at no point does anyone seem to have questioned the treatment of the 0.15 allegation as an "enhancement" paragraph. Indeed, the First Court's modification of the judgment is an implicit (though probably unconsidered) endorsement of the practice.

[3] The opinion does not explicitly state that the prior conviction was used to enhance the offense to a Class A misdemeanor, but it notes that Flowers was sentenced to 270 days in jail from a misdemeanor court, which is possible only with a Class A conviction.

unnoticed. *See, e.g., Couch v. State*, 13-13-00389-CR, 2014 WL 585849, at *3 (Tex. App.—Corpus Christi Feb. 13, 2014, pet. ref'd) (mem. op. not designated for publication) ("The jury found Couch guilty of DWI. *See* [Penal Code] § 49.04(a). During the punishment phase of trial, Couch pleaded true to an enhancement paragraph, which alleged a prior conviction for DWI. *See id.* § 49.09(a)."); *Coward v. State*, 12-13-00114-CR, 2013 WL 3788162, at *1, *4 (Tex. App.—Tyler July 17, 2013, no pet.) (mem. op. not designated for publication) (discussing sufficiency to support "the jury's finding of guilt" and "trial judge's" finding of "true" to "enhancement allegation" of prior DWI conviction); *Clift v. State*, 05-13-00324-CR, 2014 WL 1856842, at *5 (Tex. App.—Dallas May 7, 2014, no pet.) (mem. op. not designated for publication) (defendant convicted for Class A DWI based on alcohol concentration of 0.15, but application paragraphs of guilt-phase jury charge related only to Class B DWI; trial court assessed punishment); *Fletcher v. State*, 08-13-00043-CR, 2014 WL 4922625, at *1 (Tex. App.—El Paso Sept. 30, 2014, no pet.) ("Appellant was charged with 'DWI-[misdemeanor] repetition.' The charging instrument also contained an enhancement paragraph describing an additional final conviction for DWI. Appellant pleaded not guilty to the charged offense. The jury found Appellant guilty as charged.

20

At punishment, Appellant entered a plea of 'true' to the enhancement paragraph."); *Ouellette v. State*, 03-08-00566-CR, 2010 WL 3377774, at *1 (Tex. App.—Austin Aug. 27, 2010), *aff'd,* 353 S.W.3d 868 (Tex. Crim. App. 2011) (mem. op. not designated for publication) ("A jury found appellant Marie Louise Ouellette guilty of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). The trial court found the enhancement paragraph true, *see id.* § 49.09(a).").

**III.   This practice is never questioned because, procedurally, it is almost impossible to raise it on appeal. This Court should grant review of this case because it presents an extremely uncommon opportunity for this Court to educate the bench and bar on this subject.**

One reason this issue is never questioned is because it is very difficult to raise it as an appellate issue. Procedurally, there is no way for the State to appeal a trial court's decision to treat the 0.15 allegation or the fact of a single prior DWI conviction as a punishment-phase enhancement. *State v. Morgan*, 160 S.W.3d 1, 3-5 (Tex. Crim. App. 2004) (where State plead prior DWI conviction in effort to elevate DWI from Class B to Class A misdemeanor but trial court issued pre-trial ruling that it would treat allegation as punishment-phase enhancement, State's effort to appeal decision was impermissible interlocutory appeal). And if

21

defendants prefer these "enhancement" allegations to be part of the punishment phase, they would not complain at the trial court, leaving the matter unreviewable on appeal. It would be altogether possible for this to be a common practice throughout the state without it yet having attracted the attention of an appellate court.

The State believes this is an important question of state law that is being mishandled often and widely throughout the state. However, because defendants do not complain about it in the trial court and the State is barred from raising the issue, the matter has never been addressed by an appellate court. This case provides this Court an opportunity to give guidance on this subject so that misdemeanor DWI trials in Texas will be conducted in a more lawful manner.

## Conclusion

The State asks this Court to grant discretionary review and hold that 1) a trial court does cannot commit reversible error by using definitions from the Penal Code, and 2) allegations that increase DWI from a Class B to a Class A offense are essential elements of Class A DWI and must be submitted to the jury during the guilt phase. The result of these holdings will be to reverse the court of appeals and affirm the appellants' conviction for Class B DWI.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
713.755.5826
Texas Bar No. 24071454

## Certificate of Compliance and Service

I certify that, according to Microsoft Word's word counting function, the portion of this brief for which Rule of Appellate Procedure 9.4(i)(1) requires a word count contains 4,452 words.

I also certify that I have requested that efile.txcourts.gov electronically serve a copy of this brief to:

R. Scott Shearer
ShearerLegal@Yahoo.com

Lisa McMinn
State Prosecuting Attorney
information@spa.texas.gov

/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 755-5826
Texas Bar No. 24071454

Date: July 23, 2015

## Appendix A


*Navarro v. State*, __ S.W.3d __, 14-13-00706-CR, 2015 WL 4103565 (Tex. App.—Houston [14th Dist.] July 7, 2015) (majority op.)



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00706-CR

---

### JOEL NAVARRO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 15
Harris County, Texas
Trial Court Cause No. 1836127**

---

## SUBSTITUTE MAJORITY OPINION

We withdraw our opinion dated May 28, 2015, and we issue this substitute opinion in its place. We deny the State's motion for rehearing.

This is an appeal from a Class A misdemeanor conviction for driving while intoxicated. At the trial court level, the State argued to the jury that a finding of intoxication under the per se theory of intoxication could be based on the alcohol

content of appellant's blood plasma rather than his whole blood. Now the State confesses error on that point.

At the trial court level, the trial judge failed to submit a question to the jury as to whether appellant's blood alcohol level was at least 0.15 to support the Class A misdemeanor conviction. Now the State confesses error on that point.

At the trial court level, the State convinced the trial judge that a Class A misdemeanor conviction could be based on blood plasma results without regard for the alcohol concentration of appellant's whole blood, and, based only on the unconverted blood plasma results, the trial judge made a finding that appellant had an alcohol concentration of at least 0.15. Now the State confesses error on that point.

Despite misleading both the trial judge and the jury, through both an improper charge and an improper closing argument, the State argues that appellant is not entitled to a new trial. The State believes that the judgment should be reformed to reflect a conviction for a Class B misdemeanor, and the case should be remanded for a new punishment hearing only. We disagree. We reverse and render a judgment of acquittal on the Class A misdemeanor, and we remand for a new trial on the Class B misdemeanor.

## BACKGROUND

Appellant and his fiancée were involved in a single-vehicle accident, the cause of which was disputed at trial. Only one eyewitness testified at trial. The eyewitness testified that he was driving down the interstate late at night when a truck in front of him suddenly veered to the left and struck a concrete barrier. Traffic had been light at the time, it had not been raining, and there was no

evidence of an obstruction in the road that would have required an evasive maneuver.

The truck rolled over three times and landed upright on its tires. When the eyewitness pulled up next to the truck, he saw appellant climbing out of the driver's side window, apparently because the door had been jammed. Appellant crawled on the pavement towards his fiancée, who had been ejected from the truck during the rollover. She was unconscious, severely injured, and lying about thirty-five feet away from where the truck had finally stopped.

Appellant told first responders that he was driving at the time of the accident. He explained that he and his fiancée were arguing inside the truck, that she grabbed the steering wheel at one point, and that he overcorrected. This story gradually changed over time. Appellant later claimed that his fiancée was feeling sick, that she slid over to be next to him, and that she accidentally hit the steering wheel. At another point, appellant reported that the accident happened because a tire blew out.

The police did not initially suspect that the accident was alcohol-related. In fact, the officer who questioned appellant at the scene opined in his original police report that appellant was not intoxicated.

There was evidence of intoxication, however. According to an emergency medical technician, appellant admitted that he had consumed at least four beers on the night of the accident. There was also blood evidence taken more than an hour after the accident, and the evidence indicated that appellant had alcohol in his system.

The blood evidence was obtained at the hospital where appellant and his fiancée were treated. The hospital collected a vial of appellant's whole blood,

which was then placed into a centrifuge. The vial was spun, causing the blood cells to separate from the blood plasma. A test of the blood plasma revealed that appellant had a blood-alcohol concentration ("BAC") of 0.158.[1]

Charges were eventually brought against appellant for driving while intoxicated. The charging instrument included an additional allegation that, at or near the time of the commission of the offense, appellant's blood showed "an alcohol concentration level of at least 0.15."

The State's expert, William Arnold of the Houston Police Department, testified that the concentration of alcohol is higher in blood plasma than it is in whole blood. The expert opined that a BAC of 0.158 in blood plasma could be converted to a BAC of 0.132 in whole blood. Assuming that appellant had been eliminating alcohol from his system, instead of absorbing it, the expert believed that appellant had a BAC of 0.133 in whole blood at the time of the accident.

Appellant did not testify at trial, but he asserted several defensive theories, one of which was that his fiancée had been driving when the accident occurred. Appellant argued that his statements to first responders had been false, and that he had only taken the blame for the accident because he felt a duty to protect his fiancée.

There was affirmative evidence to support this theory. The record showed that appellant was excluded as a contributor of a DNA sample collected from the driver's side air bag. The DNA revealed a partial profile belonging to a female of unknown origin, who could have been the fiancée.

---

[1] In this opinion, all numerical references to BAC are expressed in the same units: grams of alcohol per 100 milliliters of blood. We denote in each instance whether the blood at issue is whole blood or blood plasma.

Other evidence included testimony from the fiancée herself, who recovered from her injuries after being in a coma for nearly a month. The fiancée admitted that she did not remember much from the accident, but she testified that there was "a good chance" that she was the driver. The fiancée explained that the truck belonged to her, not appellant. She was possessive over the truck, and only allowed appellant to drive it on rare occasions. She also observed photographs of the truck after the accident, and said that the position of the driver's seat would have been uncomfortable for appellant, who is more than a foot taller than she is and has a much larger frame.

The trial court instructed the jury that it could make a finding of intoxication in either of two ways: (1) if appellant did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, or (2) if appellant had an alcohol concentration of 0.08 or more. "Alcohol concentration" was defined in the court's charge as "the number of grams of alcohol per 100 milliliters of blood." Appellant objected to this definition because it did not specify that the blood must be whole blood. Appellant requested that the definition be revised to read as follows: "the number of grams of alcohol per 100 milliliters of *whole* blood." The trial court denied the request.

During closing arguments, the issue over blood evidence arose again when the prosecutor advised the jury that it was not limited by the type of blood that it could consider. The prosecutor said:

> As you know, we have heard a lot of evidence today and we heard a lot about blood evidence today. I just want to draw y'all's attention to the charge, that you will be given the definition of what an alcohol concentration is and that definition is the number of grams of alcohol per 100 milliliters of blood. You won't find anywhere in here in the law where it needs to be whole blood or plasma blood. This is the law y'all follow.

Appellant objected to this argument as a misstatement of law. He explained, "The law requires whole blood." But the trial court overruled the objection. The prosecutor later expanded on her argument, saying directly and without objection that the jury could find that appellant was intoxicated based solely on the testing of his blood plasma.

The jury convicted appellant of driving while intoxicated, but it did not make the additional finding that he had "an alcohol concentration level of at least 0.15," as had been alleged in the charging instrument. The trial court did not submit that issue in the jury charge.

Appellant elected to have the trial court assess his punishment. No new evidence was offered during this phase. The trial court began the hearing by treating the additional allegation in the charging instrument as an enhancement paragraph, which the court found to be true. By making an affirmative finding that appellant had "an alcohol concentration level of at least 0.15," the court applied a range of punishment applicable to a Class A misdemeanor, instead of a Class B misdemeanor, which is what appellant would have faced without the perceived "enhancement."

**SUFFICIENCY OF THE EVIDENCE**

**I.     The Jury's Finding**

Appellant was charged under section 49.04(a) of the Texas Penal Code, which provides: "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." In his first issue, appellant contends that the evidence is legally insufficient to show either (1) that he was the driver of the truck, or (2) that he was intoxicated.

6

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The evidence is insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and improperly admitted evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**A.     Driver**

Appellant acknowledges that he initially admitted to first responders that he was driving the truck at the time of the accident. He suggests, however, that his admissions must be disregarded because he was actually lying to protect his fiancée.

We do not agree that the admissions must be disregarded. The jury was free to believe appellant's original statements, and under the applicable standard of review, those statements must be credited because they support the jury's verdict. *See Guess v. State*, 419 S.W.3d 361, 366 (Tex. App.—Tyler 2010, pet. ref'd) (holding that the jury was entitled to believe the defendant's initial statement to police that he was the one who drove off the road).

Appellant's admissions are also corroborated by other evidence. For instance, blood was found on the driver's side headrest, but unlike the sample that was collected from the driver's side air bag, DNA testing revealed that a male of unknown origin had contributed the blood. Because appellant was the only male in the vehicle, the jury could have reasonably believed that appellant was the contributor, and that the blood transferred to the headrest because appellant had been sitting in the driver's seat.

Additionally, an eyewitness testified that he saw appellant climbing out of the driver's side window immediately after the accident. For the same reason as before, the jury could have inferred that appellant was exiting from that side because he had previously been driving. *Cf. Dickson v. State*, 642 S.W.2d 185, 189 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd) (evidence supported a finding that the defendant had been driving a vehicle when the defendant was seen emerging from the driver's side immediately after the vehicle was stopped).

We do not doubt that the jury could have made the opposite finding that appellant was merely a passenger at the time of the accident. Appellant certainly produced evidence that created a fact issue on this point. But in such circumstances, it is not the role of this court to determine which evidence the jury should have believed. *See Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). Viewing the evidence in the light most favorable to the jury's verdict, we

conclude that a rational finder of fact could have determined beyond a reasonable doubt that appellant was driving the truck at the time of the accident.

## B. Intoxicated

The jury received the statutory definition of "intoxicated," which has two alternative meanings: "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body; or (B) having an alcohol concentration of 0.08 or more." *See* Tex. Penal Code § 49.01(2). We have described these meanings as providing alternative methods of proving that a person is intoxicated. *See Bradford v. State*, 230 S.W.3d 719, 721–22 (Tex. App.— Houston [14th Dist.] 2007, no pet.). The two methods are known, respectively, as the impairment theory of intoxication and the per se theory of intoxication. *Id*. Because the two methods of proof are not mutually exclusive, evidence offered under the per se theory can also support a finding that a person is impaired. *See Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012). As indicated above, proof under the per se theory requires an alcohol concentration expressed in grams of alcohol per 100 milliliters of blood. *See* Tex. Penal Code § 49.01(1)(B).

Appellant contends that the evidence is insufficient to show that he was intoxicated, citing multiple reasons. He points out first that an investigating officer originally reported that appellant was not intoxicated. Along this same track, appellant refers to testimony that field sobriety tests were never administered on him, that he was never found to have been slurring his words, and that he was actually found to be alert and oriented immediately after the accident.

On a different track, appellant asserts that the blood evidence failed to meet certain standards. Appellant complains that the expert who calculated the BAC of his whole blood used a conversion ratio based on a scientific average, rather than a consideration of appellant's individual characteristics. Appellant points out that

9

conversions depend heavily on the health of the person, and if his health were shown to be outside the average, then a certain conversion would have established that he was not intoxicated.

The expert's testimony was primarily used to prove that appellant was intoxicated under the per se theory. Even if we were to conclude that the expert's methodology was inexact, the conviction would still be supported if there were legally sufficient evidence offered under the impairment theory. We conclude that the record contains such evidence.

The jury heard that appellant admitted to having consumed at least four beers on the night of the accident. Thus, there is some proof that alcohol was introduced into appellant's body. The jury could have reasonably determined that the accident occurred because appellant lost the normal use of his faculties by reason of that introduction.

The absence of certain environmental factors supports that implied finding. The record shows that there were few cars on the road, and that it had not been raining. There is also no evidence of an obstacle in the road that would have required a sudden turn.

There was some testimony that the accident could have occurred for reasons other than intoxication: appellant may have overcorrected, his fiancée may have accidentally hit the steering wheel, or a tire may have blown out. But the jury was free to disbelieve this evidence and conclude that appellant was impaired by his consumption of alcohol. We conclude that there is legally sufficient evidence of appellant's intoxication, and that a rational jury could have found every element of the offense beyond a reasonable doubt. *See Lorenz v. State*, 176 S.W.3d 492, 495 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (concluding that the evidence was sufficient to prove the defendant's intoxication when, among other factors,

10

there was evidence that the defendant admitted to having consumed portions of three alcoholic beverages).

## II.     The Trial Court's Finding

In its brief, the State makes a "Confession of Unassigned Error," contending that there is legally insufficient evidence to support the trial court's finding that appellant had "an alcohol concentration level of at least 0.15." The State bases this confession on authority that the statutory meaning of "blood" is restricted to whole blood, as appellant argued at trial, and there is no evidence that the BAC of appellant's whole blood was at least 0.15. Even if there were legally sufficient evidence, the State asserts that the trial court should not have made its finding because appellant's alcohol concentration level was an element of an offense, and therefore, it should have been submitted to the jury during the guilt-innocence phase of trial.

Appellant did not respond to the State's confession in his reply brief, but we may still address an unassigned error if it was preserved below. *See Sanchez v. State*, 209 S.W.3d 117, 120–21 (Tex. Crim. App. 2006). Because a defendant need not preserve error as to a claim that the evidence is insufficient to prove an element of the offense for which he was convicted, we choose to address this issue. *See Flanary v. State*, 166 Tex. Crim. 495, 496, 316 S.W.2d 897, 898 (1958) (op. on reh'g).

### A.     Element or Enhancement?

We must first decide whether a person's alcohol concentration level provides a basis for enhancement, as the trial court believed, or whether it functions as the element of a completely separate offense, as the State asserts on appeal.

11

In *Calton v. State*, the Court of Criminal Appeals explained the differences between elements and enhancements. *See* 176 S.W.3d 231 (Tex. Crim. App. 2005). The court said that the elements of an offense are defined as "the forbidden conduct, the required culpability, any required result, and the negation of any exception to the offense." *Id.* at 233. A reviewing court must look to the plain language of the statute when discerning whether any given fact constitutes an element of the offense. *Id.*

An enhancement, by contrast, is a fact that increases the punishment range to a certain range above what is ordinarily prescribed for the crime that was charged. *Id.* "It does not change the offense, or the degree of the offense, of conviction." *Id.*

With those considerations in mind, we now turn to the relevant statute, the full text of which provides as follows:

> (a) A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.
>
> (b) Except as provided by Subsections (c) and (d) and Section 49.09, an offense under this section is a Class B misdemeanor, with a minimum term of confinement of 72 hours.
>
> (c) If it is shown on the trial of an offense under this section that at the time of the offense the person operating the motor vehicle had an open container of alcohol in the person's immediate possession, the offense is a Class B misdemeanor, with a minimum term of confinement of six days.
>
> (d) If it is shown on the trial of an offense under this section that an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed, the offense is a Class A misdemeanor.

Tex. Penal Code § 49.04.

There is only a single reference in this statute to "an alcohol concentration level," and it is located under Subsection (d). A plain reading of that subsection

12

reveals that its effect is to convert an offense from a Class B misdemeanor to a Class A misdemeanor whenever a person charged with driving while intoxicated is shown to have "an alcohol concentration level of 0.15 or more." Because this conversion represents a change in the degree of the offense, rather than just an enlargement of the punishment range for a Class B misdemeanor, we agree with the State that a person's alcohol concentration level is not a basis for enhancement. *See Calton*, 176 S.W.3d at 233 (an enhancement does not change the degree of the offense of conviction). It is instead an element of a separate offense because it represents a specific type of forbidden conduct—operating a motor vehicle while having an especially high concentration of alcohol in the body. *Cf. Mapes v. State*, 187 S.W.3d 655, 658 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (stating that in a prosecution under Section 49.09, where the defendant is accused of driving while intoxicated and of having prior convictions for driving while intoxicated, the prior convictions are elements of the offense, and not bases for enhancement, in part because they affect the degree of the offense).

### B.    Meaning of "Blood" and Evidence of Alcohol Concentration

The evidence shows that a vial of appellant's whole blood was obtained at the hospital more than an hour after the accident occurred. From that sample, the blood plasma was separated from the blood cells, and testing of the blood plasma revealed that appellant had a BAC of 0.158. This was the only blood sample that was ever tested for its alcohol content.

The State's expert converted the blood plasma results using a scientifically accepted method and concluded that appellant's whole blood had a BAC of 0.132.

13

There was no testimony that appellant's whole blood had a BAC that was 0.15 or more at the time the analysis was performed.[2]

Based on this evidence, a finding that appellant had "an alcohol concentration level of 0.15 or more" could be supported only if a person's alcohol concentration was measured in units of blood plasma, and not whole blood.[3] The statute defining "alcohol concentration" does not provide express guidance on this point. It does not say, for instance, whether proof must be submitted in units of whole blood or blood plasma. Rather, it generally provides that alcohol concentration means the number of grams of alcohol per 100 milliliters of "blood," without specifying which type. *See* Tex. Penal Code § 49.01(1)(B).

The word "blood" is not defined in the Penal Code, but the Court of Criminal Appeals has indicated that it can only mean whole blood. In *Bigon v. State*, the court discussed the reliability of certain methods for converting the BAC of blood serum into the BAC of whole blood. *See* 252 S.W.3d 360, 368 (Tex. Crim. App. 2008). If our criminal statutes did not require proof of a person's intoxication as expressed in units of whole blood, there would have been no need for the conversion testimony. Therefore, *Bigon* supports the conclusion that "blood" means "whole blood."

---

[2] We explain, *infra*, at note 6, that the expert's calculations were wrong. However, even if the expert had correctly converted the results of appellant's blood plasma testing, there would still be no showing that the BAC of appellant's whole blood was at least 0.15 at the time the analysis was performed.

[3] Although alcohol concentration is a separate element of the Class A misdemeanor offense, appellant has not argued that the trial court violated his due process rights by not submitting that element to the jury. *Cf. Ex parte Boyd*, 58 S.W.3d 134, 136 (Tex. Crim. App. 2001) (applying *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). In any event, we need not address this issue because we conclude that appellant is entitled to an acquittal of the Class A misdemeanor on other grounds.

The common definition of "blood" enforces the conclusion that the word encompasses more than just blood plasma. A leading dictionary describes blood as "the usually red fluid, consisting of plasma, red and white blood cells, etc., that circulates through the heart, arteries, and veins of vertebrates." *See* Webster's New World College Dictionary 150 (3d ed. 1996). Medical texts contain similar definitions. *See* Gray's Anatomy [5] (15th ed. 1995) ("Blood consists of a faintly yellow fluid, the *plasma* or *liquor sanguinis*, in which are suspended numerous minute particles, the *blood corpuscles*, the majority of which are coloured and give to the blood its red tint.").

The Legislature has also signaled its intent that blood should not be synonymous with blood plasma. In another statute proscribing the sale of human organs, the Legislature expressly provided that the term "human organ" does not include "hair or blood, blood components (including plasma), blood derivatives, or blood reagents." *See* Tex. Penal Code § 48.02(a). Because the Legislature described plasma as a "blood component," and juxtaposed that term with "blood" itself, we must conclude that plasma is a only subset of blood, and that the two terms are not congruent.

If we apply that same understanding to the chapter proscribing the offense of driving while intoxicated, then "blood" as used in the definition of "alcohol concentration" must not mean "blood plasma" or any other "component" of blood. *See* Tex. Gov't Code § 311.011(b) (providing that words that have acquired a technical or particular meaning, whether by legislative definition or otherwise, should be construed accordingly). Instead, it must mean blood with all of its components, which is otherwise known as "whole blood."

Because there is indeed no evidence that the BAC of appellant's whole blood was ever 0.15 or greater at the time of the blood draw, we agree with the

15

State's confession of error that the trial court's finding is unsupported by the record. If that were the only issue in the case, we would reform the trial court's judgment to reflect a conviction for a Class B misdemeanor, which is supported by sufficient evidence as explained above, and remand for a new punishment hearing. *See Calton*, 176 S.W.3d at 233; *Bowen v. State*, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012). Appellant has asserted other issues, however, and as we explain below, those issues require a new trial.

## CHARGE INSTRUCTION

In his second issue, appellant contends that the trial court committed charge error when it denied a request to clarify the definition of "alcohol concentration" so that it was expressed in terms of "whole blood," rather than just "blood." We review this complaint under a two-step process, considering first whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error does exist, we then analyze that error for harm under the procedural framework of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

## I.    Error

The trial court must give the jury "a written charge distinctly setting forth the law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14. The State contends that the trial court fulfilled this duty because its charge gave a definition of "alcohol concentration" that exactly tracked the language of Section 49.01. The charge provided: "'Alcohol concentration' means the number of grams of alcohol per 100 milliliters of blood."

The Court of Criminal Appeals has previously stated that a jury charge that tracks the language of a statute is "a proper charge on the statutory issue." *See Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994). This rule has been

16

expressed in other settings as well, but the court has not always adhered to it. For instance, when the issue is whether an indictment should be quashed for failing to provide adequate notice, the court has held that tracking the language of the statute may not always be sufficient. In *Haecker v. State*, the court explained that a charging instrument does not provide adequate notice if it tracks the language of the statute and the statute itself is not "completely descriptive of the offense." *See* 571 S.W.2d 920, 921 (Tex. Crim. App. [Panel Op.] 1978). Similarly, in *State v. Mays*, the court held that an indictment will require greater specificity when a statute uses "an undefined term of indeterminate or variable meaning." *See* 967 S.W.2d 404, 407 (Tex. Crim. App. 1998). Relatedly, in the charge context, the court has recognized that the jury should be given a definition of terms that have acquired a technical or established legal meaning. *See Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000); *see also Middleton v. State*, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003) (plurality op.).

The principles behind *Haecker*, *Mays*, and *Medford* guide us when reviewing the correctness of a jury charge. Just as the defendant must receive adequate notice of the charges against him, the jury must understand which law to apply, and the wording of a statute may not be enough. As the Court of Criminal Appeals recently reiterated, "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge *to lead and to prevent confusion*." *Reeves v. State*, 420 S.W.3d 812, 818 (Tex. Crim. App. 2013) (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)) (emphasis added). A charge will not prevent confusion if the statutory text on which it is based has a variable meaning in the eyes of the jury.

Standing alone, the statute here is not ambiguous or confusing. "Blood," as that term is used in Section 49.01, can have only one meaning, and that meaning is

17

"whole blood" as explained above. But during the trial, the jury was not advised of this specific definition, and even before closing arguments began, the jury received conflicting messages regarding its meaning.

When the State's expert took the stand, appellant cross-examined him about the proof needed to establish that a person is legally intoxicated. The jury heard the following testimony:

Q.    And in terms of the law and forensics, Texas requires that the sample be whole blood, correct?

STATE:    Objection, Your Honor, that's not the law.

COURT:    Overruled.

A.    Not that I'm aware.

Q.    Let me rephrase. Not that the—it doesn't require that the sample itself be whole blood, but the law mandates that the levels of alcohol be related to whole blood, correct?

STATE:    Objection, Your Honor, calls for a legal conclusion.

COURT:    Overruled.

A.    It dictates units. Off the top of my head, I'm afraid I can't answer regarding the exact statement in the law.

Q.    Okay. You're familiar with the term "BAC"?

A.    Yes.

Q.    And what does that stand for?

A.    BAC can be used—typically it's used for blood alcohol concentration.

Q.    Okay. And if I said to you in Texas the law is that you can't have .08, I believe it's milligrams?

A.    It would be grams per one hundred milliliters.

Q.    Okay. So, of whole blood, correct?

A.    Again, I would have to go back and look. It's .08 grams per 100 milliliters is what I remember, at this point.

18

Q. So, you're not even aware whether the law in Texas requires whole blood or plasma blood?

A. Without—we report all values as blood alcohol whole blood equivalent. I know we do run serum and plasma and then convert them to the whole blood equivalent and that is standard practice throughout the United States. I'm not going to go off and venture out to say what Texas law specifically delineates in their statutes.

The jury never received a definitive answer from the expert, and the State obfuscated the issue by objecting to any suggestion that whole blood is the sole unit of measurement under the statute. As discussed further below, the State also suggested to the jury in its closing argument that whole blood did not need to be the unit of measurement, and the trial court overruled appellant's objection to this argument.

This is not a case where the jury was free to assign its own understanding to an undefined term from a statute. *Cf. Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012) (holding that the jury should have been free to decide on its own whether the evidence showed that the defendant was "operating" a motor vehicle). The word "blood" is capable of only one meaning under the Penal Code, and the jury should have been instructed of that meaning because it was the law applicable to the case. Because the jury heard testimony regarding both whole blood and blood plasma, we conclude that it was error to refuse appellant's requested instruction, which removed the possibility of confusion by specifying the type of blood evidence that was available for consideration.

## II.    Harm

Under *Almanza*, the level of harm necessary for reversal depends on whether the defendant timely and specifically objected to the jury charge. *See Almanza*, 686 S.W.2d at 171. If the defendant did not object, then reversal is required only if the

trial court's error was so egregious and created such harm that the defendant did not have a fair and impartial trial. *Id.* Because the defendant in this case properly objected, reversal is required if there was just "some harm." *Id.*

To determine harm, we weigh the following factors: (1) the jury charge as a whole; (2) the arguments of counsel; (3) the entirety of the evidence; and (4) any other relevant factors present in the record. *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Even though the "some harm" standard is a low threshold, it nonetheless requires the reviewing court to find actual harm, rather than just theoretical harm. *Id.* Neither party bears the burden on appeal to prove harm or harmlessness. *Id.* at 462.

## A.    The Jury Charge

The jury received a single instruction, which asked it to determine whether appellant had "unlawfully operate[d] a motor vehicle in a public place while intoxicated." As stated above, the definition of "intoxicated" tracked the language of Section 49.01, meaning that the jury was allowed to convict appellant on either the impairment theory of intoxication or the per se theory of intoxication. However, the jury was never asked to identify which theory it used in the event of a conviction. Thus, we cannot know whether the jury found that appellant had lost the normal use of his faculties as the result of his consumption of alcohol, whether it found that the alcohol concentration in his blood was above the legal limit under the legally flawed portion of the charge, or whether it made findings under both theories. Accordingly, we turn to the other factors to determine whether the erroneous denial of appellant's requested instruction might have prejudiced the jury's consideration of the evidence or substantially affected their deliberations. *See Bagheri v. State,* 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

20

## B. Closing Arguments

Appellant's main defensive theory was that he was not the driver. During closing arguments, appellant spent most of his time explaining that his fiancée was responsible for the accident, and that he had initially taken the blame because he wanted to protect her.

In the alternative, appellant also argued that he was not intoxicated, a point that would have been relevant only in the event that he was found to be driving. Appellant limited his argument to just the impairment theory of intoxication. He asked the jury to acquit him because testimony from the first responders supported a finding that he was not impaired.

The State argued that appellant was the driver and that he should be found guilty under either theory of intoxication. As for the impairment theory, the State recited testimony that appellant had consumed several beers on the night of the accident. As for the per se theory, the State pointed to the expert's opinion regarding the alcohol concentration in appellant's whole blood and blood plasma.

Appellant asserts in his third issue that the State made an improper closing argument. We will consider this issue as part of our harm analysis for charge error. At the beginning of its closing argument, the State told the jury: "You won't find anywhere in here in the law [the charge] where it needs to be whole blood or plasma blood. This is the law y'all follow." Appellant objected to this argument and asserted that the "law requires whole blood," but the trial court overruled the objection. By overruling appellant's objection, the trial court gave the incorrect impression that a conviction could be had by evidence other than whole blood, thereby magnifying the possibility for harm. *See Good v. State*, 723 S.W.2d 734, 738 (Tex. Crim. App. 1986); *Kincaid v. State*, 534 S.W.2d 340, 342 (Tex. Crim. App. 1976). Later, the State further magnified this erroneous ruling by telling the

jury that it could convict appellant because the BAC of his blood plasma exceeded 0.15.

The State's argument was a misstatement of law.[4] Proof under the per se theory must be based on evidence of a person's BAC in whole blood. The trial court put its imprimatur on the improper argument by overruling an objection that "the law requires whole blood." Had the trial court granted appellant's requested instruction, the State would have known not to make its improper argument, and the jury never would have heard those prejudicial remarks.

## C.    The Evidence

Appellant presented affirmative evidence in support of two defensive theories: (1) that he was not the driver, and (2) that he was not intoxicated. The jury rejected the evidence as it related to the first defensive theory. The jury found that appellant was the driver, and we have no reason to suspect that this finding was a byproduct of the trial court's charge error. If the error had any impact at all on the jury's deliberations, it affected the manner in which the jury assessed the evidence of appellant's intoxication.

Insofar as the impairment theory of intoxication is concerned, the evidence was conflicting. The State produced evidence that appellant was impaired: he admitted that he consumed several beers, he had alcohol in his system, and there

---

[4] The State contends that its trial argument was "plainly true" and an accurate description of the jury charge. Because the charge did not specify that appellant's alcohol concentration must be measured in units of whole blood, the State believes it could not be improper to say that the charge was silent. We disagree. By emphasizing that the charge was silent, the State's manifest objective was to convey to the jury that it could base a finding of intoxication on either the evidence of whole blood or the evidence of blood plasma. This effect made the argument improper, even though it was otherwise grounded by an accurate statement of fact. *Cf. Myers v. State*, 573 S.W.2d 19, 20–21 (Tex. Crim. App. [Panel Op.] 1978) (prosecutor made an improper closing argument when a comment about an accurate statement of fact created an implied or indirect allusion to the defendant's failure to testify).

was no environmental cause for explaining the accident. Appellant emphasized a different view of the evidence: the first responders believed that he was not intoxicated, he was not slurring his speech, and he was described as being alert and oriented. There was also evidence suggesting that the accident could have resulted from a cause other than intoxication, such as an overcorrection. This alternative explanation created a fact question for the jury to resolve.

As for the per se theory, the evidence was complex. A hospital technician testified that appellant's blood sample was obtained solely for purposes of treatment, not forensics. The technician recognized that there were differences between whole blood and blood plasma, but he could not explain how the concentrations of alcohol varied between the two samples. The only witness who could explain that relationship was the State's expert, William Arnold.

The expert testified that the BAC of a person's blood "serum" is 16% higher than the BAC of his whole blood.[5] Applying that ratio to the BAC of appellant's blood plasma, the expert opined that appellant's whole blood had a BAC of 0.132 at the time of the blood draw.[6]

During a voir dire examination, the expert conceded that his 16% ratio was not universally accepted throughout the scientific community. He explained that

---

[5] The expert did not provide a ratio as it specifically relates to a person's blood "plasma," but we recognize that the differences between blood serum and blood plasma are small. Studies have shown that alcohol concentrations are often very close between the two samples, if not the same, with an average variance of approximately 1%. *See* Charles L. Winek & Mark Carfagna, *Comparison of Plasma, Serum, and Whole Blood Ethanol Concentrations*, 11 J. Analytical Toxicology 267, 267–68 (1987) (cited approvingly in *Bigon*, 252 S.W.3d at 368 n.6).

[6] It appears that the expert miscalculated here. He subtracted 16% of 0.158 from 0.158 (which is the same as multiplying 0.158 by 0.84), when he should have divided 0.158 by 1.16. *See Jessup v. State*, No. 13-02-00024-CR, 2004 WL 2612958, at *3 (Tex. App.—Corpus Christi Nov. 10, 2004) (mem. op., not designated for publication) (reciting expert testimony that the BAC of whole blood is derived by "divid[ing] the serum concentration by 1.16"). The difference between the expert's miscalculation and the correct calculation is *de minimis*.

23

16% is just an average, and that the range of ratios can be "quite dramatic" depending on the health and gender of the person. If a person has a high blood cell count—for example, if he has leukemia—then the BAC of the person's blood plasma can be 50% or 60% higher than the BAC of his whole blood.

The expert testified that he had "no idea" what ratio should apply in appellant's case. The expert never considered appellant's individual characteristics, and there was no live testimony establishing whether appellant had a blood cell count that was within normal ranges.[7] The expert advised the jury, however, that if a higher conversion ratio did apply to appellant because he had a high blood cell count, then the BAC of his whole blood would have been 0.079, below the per se limit.

In addition to this conversion testimony, the expert provided a retrograde extrapolation analysis. The expert explained that when a person consumes alcohol, his body will absorb the alcohol into his system until it is eliminated by the liver. During the absorption phase, the concentration of alcohol in the body will increase at a rate that depends on a number of factors, such as how many drinks were consumed, how quickly they were consumed, and whether they were consumed on

---

[7] Our dissenting colleague points out that appellant's hematologic history was checked as normal, according to a report attached to his medical records. However, this report was never discussed at trial, and there is no indication that the jury ever saw it. At the end of closing arguments, the trial court advised the jury that the exhibits, if requested, would be delivered to the deliberation room: "I'll remind you again that if you want to see the evidence, you can ask for any or all—any or all of that, and we'll send it into the jury room with you." There is no record that the jury made a request, and the trial court did not note a request in any of its docket sheets.

Even if the medical records had been requested, there is no showing that the jury would have known how to interpret them. The meaning of "hematologic" is unlikely to be within the common understanding of a lay juror. Furthermore, the records clearly denoted that appellant had a "High" count of "WBC"—white blood cells, we presume. A juror could have seen the records and concluded that appellant's blood cell count was higher than average.

24

a full or empty stomach. According to the expert, once all of the alcohol has been fully absorbed, the liver will eliminate the alcohol at a constant rate of 0.015 grams per 100 milliliters per hour.

The expert made two assumptions: (1) that appellant was eliminating alcohol from his system at the time of the blood draw, and (2) that the accident occurred one and half hours before the blood draw.[8] From these assumptions and his stated formula, the expert estimated that the BAC of appellant's whole blood at the time of the accident was 0.133.

The expert did not explain in detail how he arrived at that figure, nor did he provide a factual basis for assuming that appellant was in the elimination phase. The expert testified that a person normally enters the elimination phase within two hours of his last drink, but there was no evidence indicating when appellant last consumed an alcoholic beverage. Nor was there any evidence of whether appellant had been drinking on a full or empty stomach. By assuming that the accident happened an hour and a half before the blood draw, the expert failed to realize that, without more information, a conclusion could not even be made that appellant had entered the elimination phase by the time he arrived at the hospital.

## D. Other Relevant Factors

We first note that the expert struggled to perform his calculations, which were "on the fly," as he described them. The trial court had to excuse the expert

---

[8] There is no concrete evidence that the accident actually happened one and a half hours before the blood draw. The expert was simply asked to conduct his analysis assuming that time lapse. From the live testimony, we know that the eyewitness who saw the accident was traveling on the interstate between 11:00 p.m. and midnight. The eyewitness did not testify about the exact time that he saw the accident, but a first responder testified that the accident happened "just before midnight." As for the other time point, the evidence is much clearer: a nurse testified that she drew appellant's blood at the hospital at 1:05 a.m.

from the courtroom, and the expert returned to give his calculations after another witness took the stand.

We also note that, if appellant had been in the absorption phase at any point between the time of the accident and the blood draw, then the BAC of his whole blood at the time of the accident would have been equal to or less than the BAC of his whole blood at the time of the blood draw. This is true regardless of the conversion ratio that is used.

### E.    Analysis

It is clear that the jury determined that appellant was driving, but it is not clear under which theory it found that he was intoxicated. There was a conflict in the evidence under the impairment theory. There was also a conflict under the per se theory; the jury heard testimony that the BAC of appellant's whole blood could have been above or below 0.08, depending on which sorts of assumptions were made.

The expert's testimony demonstrated that many variables must be accounted for when trying to establish that a person is intoxicated per se. But under the trial court's erroneous view of the law, none of those variables needed to be considered in this case. The trial court's charge error, when combined with the State's improper argument, allowed the jury to convict appellant solely on the basis that the BAC of his blood plasma exceeded the per se limit. We conclude that this error resulted in some harm because it completely obviated the jury's need to examine appellant's alternative defense, and there was affirmative evidence in support of this defense showing that appellant was not impaired. *See Anderson v. State*, 774 S.W.2d 733, 735 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (erroneous instruction on the per se theory of intoxication was harmful, even though there was sufficient evidence to convict under the impairment theory of intoxication); *cf.*

26

*Bagheri*, 119 S.W.3d at 763–64 (erroneous admission of retrograde extrapolation testimony was harmful, even though there was sufficient evidence to convict under the impairment theory of intoxication).

## CONCLUSION

The evidence is legally insufficient to support a conviction for a Class A misdemeanor for driving while intoxicated. We render a judgment of acquittal as to this offense, meaning that the State is barred from retrying it. *See Ex parte Granger*, 850 S.W.2d 513, 518 (Tex. Crim. App. 1993).

There is sufficient evidence to support a conviction for a Class B misdemeanor, but because we conclude that the trial court committed harmful errors with respect to this offense, we reverse the court's judgment and remand the case for a new trial.[9]

/s/    Tracy Christopher
           Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby. (Frost, C.J., dissenting).
Publish — Tex. R. App. P. 47.2(b).

---

[9] This disposition makes it unnecessary to address appellant's fourth issue, in which he argues that the trial court imposed an unconstitutional condition of community supervision.

## Appendix B

*Navarro v. State*, __ S.W.3d __, 14-13-00706-CR, 2015 WL 4103565 (Tex. App.—Houston [14th Dist.] July 7, 2015) (Frost, C.J., dissenting).



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00706-CR

---

### JOEL NAVARRO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 15
Harris County, Texas
Trial Court Cause No. 1836127**

---

## S U B S T I T U T E   D I S S E N T I N G   O P I N I O N [1]

When police responded to a single-vehicle accident, they found the vehicle's two occupants — appellant and his girlfriend — in the middle of the freeway. Both were injured. A motorist reported that he had seen their truck veer into the highway's median. The truck flipped three times, ejecting the girlfriend and

---

[1] The dissenting opinion dated May 28, 2015, is withdrawn, and this opinion is issued in its place.

leaving her unconscious.  At the scene, appellant admitted to a police officer that he sat down behind the wheel of the truck and turned the key.  Appellant later admitted to having consumed five beers before getting behind the wheel.  The jury convicted appellant of driving while intoxicated ("DWI"). Today, the court reverses the conviction.

In an apparent first in the history of Texas jurisprudence, the majority holds the trial court erred in defining a term for the jury using the same unambiguous language the Texas Legislature used to define the term in the statute establishing the charged offense.  After finding error, the majority also finds harm, despite overwhelming evidence that appellant was driving while intoxicated.  Seeing neither error nor harm, I respectfully dissent.

### The Jury Charge

In the jury charge for the guilt/innocence phase, the trial court defined "alcohol concentration" as "the number of grams of alcohol per 100 milliliters of blood."  Appellant objected and requested the trial court to insert the word "whole" so that the definition would read "the number of grams of alcohol per 100 milliliters of whole blood."  The trial court overruled appellant's objection and refused to submit the definition in the form appellant requested.

Article 36.14 of the Code of Criminal Procedure requires a trial court to provide a written jury charge distinctly setting forth the law applicable to the case.[2] The definition the trial court submitted tracks the plain language the Texas Legislature chose to define "alcohol concentration" in the DWI statute.[3]  In this

---

[2] *See* Tex. Code Crim. Proc. art 36.14 (West, Westlaw through 2013 3d C.S.); *Casey v. State*, 215 S.W.3d 870, 886 (Tex. Crim. App. 2007).

[3] *See* Tex. Penal Code Ann. § 49.01(1) (stating that "'[a]lcohol concentration' means the number of grams of alcohol per . . . 100 milliliters of blood") (West, Westlaw through 2013 3d C.S.).

definition, the trial court set forth the law applicable to the case.[4] A jury charge that tracks the language of a particular statute is a proper charge on the statutory issue.[5]

*No Error*

Citing a leading dictionary and a medical textbook, the majority explains that the plain meaning of the term "blood" is whole blood and concludes the trial court erred in refusing to substitute the term "whole blood" for the term "blood" because the charge had a "variable" meaning in the eyes of the jury. The majority concludes the charge had a variable meaning because the State's expert witness did not know whether the term "blood" meant "whole blood" in a legal context. The expert did not testify that the term meant blood plasma. The expert explained that blood plasma and whole blood are different in that the Houston Police Department crime lab uses whole blood if it is available and converts blood plasma into whole blood if whole blood is not available. In response to a question asking if the expert was aware whether Texas law required whole blood or blood plasma, the expert stated:

> Without -- we report all values as the blood alcohol whole blood equivalent. I know we do run serum and plasma and then convert them to the whole blood equivalent and that is standard practice through the United States. I'm not going to go off and venture to say what Texas [l]aw specifically delineates in their statutes.

---

[4] *See Casey*, 215 S.W.3d at 886–87.

[5] *See Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994). Citing to two opinions, the majority states that the jury should be given the definition of a term that has acquired a technical or established legal meaning. *See Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000); *Middleton v. State*, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003) (plurality op.). But, in neither did the Court of Criminal Appeals hold the trial court abused its discretion in not charging the jury on the definition of a term with a technical or established legal meaning. In any event, neither the majority nor the parties cite any cases holding that "blood" is either a technical term or a term with an established legal meaning.

3

The majority concludes the State obfuscated the meaning by objecting to any suggestion that whole blood is the sole unit of measurement under the statute. But, the trial court overruled those objections.

Neither appellant nor the majority cite, and research has not revealed, any Texas precedent holding that the trial court's definition of "alcohol concentration" is erroneous or that appellant's proffered definition is required. Nor has research revealed any Texas precedent holding that a trial court errs in submitting a jury charge that tracks the applicable Texas statute. This court should not do so. Instead, the court should conclude that the trial court did not err in overruling appellant's objection and refusing to submit the definition in the form appellant requested.[6] Because the trial court did not err, there is no need to conduct a harm analysis.

*No Harm*

Even presuming for the sake of argument that the trial court erred in rejecting appellant's proposed jury charge, the error is harmless. If a jury charge contains error, an appellate court must analyze that error to determine whether it is harmful.[7] Because appellant timely objected to the charge, this court should reverse only if appellant suffered "some harm."[8] In assessing harm under this standard, the court is to weigh (1) the jury charge as a whole; (2) the arguments of counsel; (3) the entirety of the evidence; and (4) any other relevant factors present in the record.[9] Even though the "some harm" standard is a low threshold, to find

---

[6] *See Casey*, 215 S.W.3d at 886; *Riddle*, 888 S.W.2d at 8.

[7] *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

[8] *See id.*

[9] *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).

4

"some harm" the reviewing court must find actual harm, rather than just theoretical harm.[10] Neither party bears the burden on appeal to prove harm or harmlessness.[11]

In assessing the jury charge as a whole, the majority notes that the charge required the jury to find appellant guilty if the jury determined appellant was intoxicated under either an impairment theory or a per se theory. The majority finds "some harm" from the charge because the jury may have disregarded the trial court's unambiguous instructions and found that appellant was intoxicated based solely on a finding that appellant's blood plasma had an alcohol concentration of 0.08 or more. In analyzing counsel's closing arguments, the majority notes the State may have emphasized the alleged jury-charge error. As the majority acknowledges, however, in the balance of appellant's argument he argues he was not the driver—an argument the jury rejected—and that the evidence did not show he was impaired under the impairment theory of intoxication.

The State presented substantial evidence that appellant was intoxicated under both per se and impairment theories. The alcohol concentration of appellant's blood plasma was .158. The expert testified that, on average, 16 percent of whole blood is consumed by cellular material. According to the expert, blood plasma does not contain that material, which means the alcohol concentration of blood plasma, on average, is 16 percent higher than the alcohol concentration of whole blood. Using this calculation, the expert converted appellant's plasma-alcohol concentration of .158 to a whole-blood-alcohol concentration of .132, well above 0.08.[12]

---

[10] *Id.*

[11] *Id.* at 462.

[12] Significantly, to the extent the jury was relying upon the alcohol-concentration part of the definition of "intoxicated," the jury was asked to determine whether the evidence proved beyond

5

The majority emphasizes the expert's testimony that the percentage of a whole blood cell consumed by cellular material can vary under certain circumstances, including blood cancer. The expert noted that in the case of leukemia, 50 percent to 60 percent of an affected individual's whole blood could contain cellular material. The majority notes that if appellant's blood-cell composition mirrored that of a cancer patient, then appellant's whole-blood-alcohol concentration would have been .079, just under the legal limit of .08. But, appellant's blood composition did not mirror a leukemia patient's blood composition.

The record evidence contains appellant's medical records.[13] Among them is a hematology report.[14] This report contains a complete blood count with reference ranges. The report shows that appellant's red blood cell count, hemoglobin level, and platelet count were all within the reference range and that only appellant's white blood cell count was outside of the reference range. Appellant's hematologic history is checked as "normal." Appellant's medical records contain no notation of a leukemia diagnosis or any other blood or bone marrow disorder. This evidence weighs against the conclusion that appellant's plasma blood-alcohol concentration was 50 percent to 60 percent higher than his whole blood-alcohol

a reasonable doubt that the blood-alcohol concentration was .08 or greater; the jury was not asked to make any determination regarding an alcohol concentration of 0.15 or higher.

[13] The trial court advised the jury that exhibits would be delivered to the jury room if requested. This instruction accords with Texas Code of Criminal Procedure article 36.25, which provides that exhibits must be furnished to the jury upon the jury's request. *See* Tex. Code Crim. Proc. Ann. art. 36.25 (West, Westlaw through 2013 3d C.S.).

[14] The majority speculates about whether the medical records went into the jury room and whether the jury understood what the hematology report meant. The relevant inquiry is whether the report was part of the evidence the jury could consider. It was. In determining harm under *Almanza*, this court must consider the entire record. *See Arrington v. State*, 451 S.W.3d 834, 840–44 (Tex. Crim. App. 2015) (reversing court of appeals for finding error harmful without considering entire record).

concentration. Considering this evidence in light of the expert's testimony that, on average, an individual's plasma blood-alcohol concentration is 16 percent higher than the individual's whole blood-alcohol concentration, leads to the conclusion that appellant's whole blood-alcohol concentration was over the legal limit of .08. Under a per se theory, the evidence supporting appellant's conviction is strong.

The evidence also shows appellant was intoxicated under the impairment theory.[15] A paramedic who arrived on the accident scene testified that appellant told him (1) appellant had consumed four alcoholic beverages and (2) appellant was the driver of the truck. Medical records admitted into evidence include notes from a social worker. According to the notes, appellant told the social worker he had been drinking before the accident; appellant placed his consumption count at five beers rather than the four beers he had told the paramedic.[16] Evidence shows that appellant was driving the truck on the interstate highway in light traffic and good conditions when the truck veered suddenly and sharply into a concrete barrier with enough force to roll the truck three times. Other evidence shows the circumstances of the single-vehicle crash suggested it was an alcohol-related event based on appellant's admission to having consumed four or five beers before the crash as well as appellant's behavior at the scene, which included lying to police officers.[17] There are no other relevant factors.[18]

Weighing the jury charge as a whole, the arguments of counsel, the evidence

___

[15] *See Butler v. State*, 981 S.W.2d 849, 857–58 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (holding no harm resulted from charge error relating to one theory of guilt because evidence supported guilt under alternate theory).

[16] *See Atkins v. State*, 990 S.W.2d 763, 769 (Tex. App.—Austin 1999, pet. ref'd) (holding jury-charge error harmless in light of evidence the defendant was intoxicated, including admission of drinking multiple beers).

[17] *See id.*

[18] The expert's de minimis calculation errors did not significantly affect the evidence of appellant's whole-blood-alcohol concentration.

presented in the case, and concluding there are no other relevant factors, this court should conclude that any error by the trial court is harmless because of the overwhelming evidence of appellant's guilt.[19]

**Conclusion**

The trial court charged the jury in accordance with Texas law. The trial court did not err in refusing appellant's request to add language to the jury charge. Even if the trial court had erred in refusing appellant's request, the error would be harmless because the evidence of appellant's guilt is overwhelming. Therefore, this court should reverse the trial court's judgment and remand this case to the trial court to reform the judgment to reflect a conviction for the Class B misdemeanor under Penal Code section 49.04(a), and to conduct a new punishment hearing.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby (Christopher, J., majority).
Publish — TEX. R. APP. P. 47.2(b).

---

[19] *See id.*